G. A. WHITLEY, Adm'r., &c. *v.* THE PEIDMONT & ARLINGTON LIFE INSURANCE COMPANY.

The premium upon a Policy of Life Insurance is considered paid to the Company, when, according to instructions, it is delivered to the Express Company, addressed to the Agent of the Insurance Company.

A Policy of Life Insurance is not binding until the premium is paid—such a clause being contained in the application. And it is the duty of the assured to communicate to the Company, any material change in his health, in the interval between the application and the completion of the contract by the payment of the premium.

This was a CIVIL ACTION, on a policy of Life Insurance, tried before *Buxton, J.,* at the Spring Term, 1874, of STANLY Superior Court.

On the trial below many points were raised and decided by the presiding Judge, to whose rulings exceptions were taken, but as most of them are not material to the questions decided in this Court, they are omitted. The opinion of Justice RODMAN contains all the material facts of the case.

Under the rulings of his Honor in the Superior Court, the jury rendered their verdict against the plaintiff. Judgment in accordance therewith, and appeal by the plaintiff.

*McCorkle & Bailey*, for appellant.
*Montgomery* and *Battle & Son*, contra.

RODMAN, J.  There are many exceptions in this case as to the competency of evidence of which we do not think it material to consider.  The material facts, and about which there seems to be no dispute, are these :

On 31st of March, 1872, Mathew Hahn, the intestate of the plaintiff, signed and delivered to the agent of the company a written application for an insurance on his life for $2,000.

It is not denied that the representations therein as to the health of Hahn at that time were true.  The application contained this language just above the signature of Hahn :  "It is hereby declared    *    *    *    also that the policy of insurance hereby applied for shall not be binding upon this Company *until the amount of premium as stated therein shall have been received by said Company*, or some authorized agent thereof, on proper receipt of the Company, during the life time of the person therein assured.  The undersigned further binds himself to pay the premium due on policy for which this application is made as soon as policy is issued by said Company, or in default of so doing, this is his obligation on which action may be brought at law to recover the same, &c.  The application was forwarded to the Company by its agent, Courts, who received a policy dated 8th April, 1872.  About the 20th April Hahn received a letter from Courts, dated 12th April, informing him that the policy had been received and directing him, as he had previously done, to send the premium of $38.84, together with $1, his fee, either by express or by post office order, to him (Courts) at Ruffin, N. C.  Some time early in May Hahn was taken sick ; he was quite sick on 11th of May, and on that day he, or his relatives, (we think it immaterial, which,) delivered to the express agent at Concord a package containing the amount of the premium and fee, directed to Courts at Raleigh, N. C.  Hahn died on 13th of May.  Courts

31

happening to be in Raleigh on 3d of June, received the package of money there on that day, and wrote to his son at Concord to countersign the policy and send it to Hahn. Courts was at that time ignorant of the sickness and death of Hahn. The policy was countersigned on 17th of June and forwarded to the late residence of Hahn. The premium soon after its receipt was forwarded to and received by the Company.

The policy contains the following:  "And it is further agreed by the within assured that the *notice* contained on the back of this policy is accepted by the assured as forming a part of this contract," &c., and also, "*Not binding on the Company* until countersigned by its authorized agent or officer, D. W. Courts, or such sub-agent as may be designated by said agent or officer, *and the advance premium paid*." The page headed "Notice" contains as follows:  "The premium of this policy is payable at the commencement of this risk in one or more premiums as may be expressed," &c.

We may shortly dispose of some preliminary questions. We consider that the premium was paid to the Company when it was delivered to the express agent at Concord, directed to Courts. It is true the address was not in conformity with his directions, as it was to Raleigh, and not to Ruffin; but as he did actually receive it within a reasonable time, and accepted and forwarded it to the Company, who retained it without objection, we consider that any variance from the directed address, was waived. Under other circumstances such a variance might be material; we confine our opinion to the particular case before us. May, on Insurance, sec. 345, p. 412.

We also consider that it is immaterial whether the premium was paid with the express knowledge and assent of Hahn, or by his relatives without his express assent. Such assent must be presumed under the circumstances. The payment was made for his benefit, and it will be presumed, in the absence of contrary evidence, that a person assents to what is so done; as for example, that he accepts a deed made to him and deliv-

ered to one who professes to be his agent, although in fact he is not.

The main questions are:

1. When was the contract of insurance consummated? Was it upon the acceptance and approval of the application by the Company, or upon the payment of the premium on the 11th of May?

2. Supposing it was consummated only on the payment of the premium, was the representation of health contained in the application a continuing one up to the consummation of the policy? Because in this last case it would be the duty of the assured to disclose to the Company any material alteration in his health in the interval, and as this was not done, and the representation of his health contained in the application, although true at its date, was not true on the 11th of May, if the representation must be considered as made on that day, it would be false to the knowledge of the plaintiff, and he would not be entitled to recover.

I. *On the first question :* We think that the clear declaration in the application that the policy shall not be binding until the premium is made, followed by a clause in the policy to the same effect, is conclusive on this point. It is true that taking this be so, there seems to be no necessity for the words which immediately follow, and which bind the applicant to pay the premium when the policy is issued, because if the premium is paid before the policy is delivered, or if the two acts are exactly concurrent, this obligation could have no effect. We consider it, however, as having been introduced from great caution and to provide for a possible case in which the delivery of the policy might precede.

II. Was it the duty of the assured to communicate to the Company any material change in his health in the interval between the application and the completion of the contract by the payment of the premium?

No rule seems to be better settled than that upon a contract of insurance. It is the duty of the assured, at or before the

making of the contract, to communicate all the facts within his knowledge which may affect the risk. 1 Phil. Ins. sec. 524 ; May. Ins. sec. 200, p. 210.

This duty cannot be the less obligatory because the assured has shortly before represented or warranted a fact to be true, which then was true, but has since ceased to be so. In such case the insurer naturally and rightfully infers that the thing insured continues in the same condition as far as the assured knows.

In *Edwards* v. *Footner,* 1 Camp., 530, the action was on a policy of insurance on goods in the Fanny from London to Hayti. The ship was captured by a French privateer with the goods on board. About a week before the policy was signed, the broker for the plaintiff stated to the defendant that the Fanny was to sail with certain armed ships, and that she herself was to carry ten guns and twenty-five men. The Fanny in fact sailed by herself, and carried only eight guns and seventeen men. Lord ELLENBOROUGH said, " If a representation is once made, it is to be considered as binding, unless there is evidence of its being afterwards altered or withdrawn."

In *Traill* v. *Baring,* 4 De. Gex., Jones & Smith, 318, the facts were : The International Life Assurance Society had assured the life of Lydia Taylor for a large sum. On 9th May, 1861, the Society assured her life for £3,000, (a part of the sum,) with the Clerk's Association, on 10th May the Secretary of the Association called on the Secretary of the Reliance Society, and proposed that that Society should take part of their risk on Lydia Taylor's life by way of re-assurance, stating that the Victoria office had agreed to undertake that risk to the amount of £1,000, *and that the Association would themselves retain* £1,000 *of it,* and proposing that the Society would take the remaining £1,000. The proposal was accepted on the same day. On 18th May, a policy was accordingly issued, being the one on which the action was brought. It was afterwards discovered that the Association instead of retaining the risk themselves to the amount of £1,000, had on the 15th May, (three

days before the date of the policy,) assured by way of re-assurance the *whole* of its risk with the Victoria office. Lydia Taylor died, and the Society refused to pay.

Lord Justice TURNER said, "I take it to be quite clear that if a person makes a representation by which he induces another to take a particular course, and the circumstances are afterwards altered to the knowledge of the party making the representation, but not to the knowledge of the party to whom the representation is made, and are so altered that the alteration of the circumstances may affect the course of conduct which may be pursued by the party to whom the representation is made, it is the imperative duty of the party who has made the representation, to communicate to the party to whom the representation has been made, the alteration of those circumstances; and that this Court will not hold the party to whom the representation has been made, bound, unless such a communication has been made." May on Insurance, secs. 190, 191, pp. 199, 201.

In both the cases cited, it was admitted there was no actual intent to deceive, and that the representations were *bona fide*, and true at the time they were made.

We think these cases stand on the ground of an admitted principle of equity, which substantially runs through the whole law of that class of contracts in which confidence is reposed in each other by the contracting parties.

The plaintiff is not entitled to recover on the policy. He is entitled to recover the premium paid, on the ground that as the risk never accrued, there was a total failure of consideration , but not in this action, as it is not demanded.

The shape of the issue which the Judge submitted to the jury, "Whether Hahn had paid the premium in his life time, *according to the contract*," was objectionable, because it involved matter of law with matter of fact.

But the instructions which his Honor afterwards gave to the jury separated the two, and left to the jury on the determination of the facts.

PER CURIAM.                          Judgment affirmed.