MASSACHUSETTS BONDING & INSURANCE COMPANY, v.
PAUL A. HOXIE, as Receiver.

176 So. 480.
Division A.
Opinion Filed September 27, 1937.
Rehearing Denied November 5, 1937.

*Zewadski & Pierce* and *C. H. Martin,* for Appellant;

*Robinson & Smith* and *Moreland E. Maddox,* for Appellee.

BUFORD, J.—The appeal brings for review final decree denying cancellation of two insurance policies and dismissing the bill of complaint.

Hoxie was Receiver of Tourist Center Building involved in litigation in St. Petersburg, Florida. Prior to January 16, 1936, appellant was the insurer in two indemnity insurance policies, one of which indemnified the insured against loss from the liability imposed by law upon the insured for damages on account of bodily injuries and/or death accidently suffered or alleged to have been suffered during the period of the policy by any person or persons not in the employ of the assured and occurring (a) within or upon the premises described in the schedule or upon the sidewalks or other ways adjacent thereto and contained other conditions not material here.

The other policy indemnified the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries and/or death accidently suffered or alleged to have been suffered during the period of the policy by any employee of the assured while engaged in the operations and on the location described in statement 3 of the schedule forming a part thereof.

On January 16, 1936, those policies expired and thereupon the appellee, through his agent and attorney, applied for renewal of the policies. Like policies were issued by the local insurance agent of the appellant and delivered to the agent and attorney of the appellee. The premiums on

these policies were not paid. The agent repeatedly demanded pay of the amount of premiums.

On March 16, 1936, the agent and attorney for appellee redelivered the policies to the agent for the company with the statement, in effect, that the agent could do what he pleased with them.

The agent of the insurance company definitely told the agent and attorney of appellee that he must have the policies or the pay of the premiums and the policies were delivered to the agent of the insurance company with the statement that the property would be sold on April 1st and the Receiver did not desire insurance after that date. The agent for the insurance company marked the policies "Cancelled," returned them to the State Agent at Tampa; the State Agent marked them "Cancelled" and returned them to the home office and the home office of the insurance company marked them "Cancelled."

There was no further transaction between the appellee and the insurance company or the appellee's agent and the insurance company until after the 2nd day of April, 1936, when a Mrs. Curtis was injured by the falling of a light fixture in the building, which falling light fixture struck her on the head. The appellee learned of the occurrence of this accident on April 8th and immediately set about to get policies of indemnity insurance. Within a few hours after appellee learned of the accident his agent and attorney went to the office of the insurance agent, taking with him a check for the full amount of premiums required for the two policies and demanded policies dated January 16, 1936, containing like terms and conditions as the old policies contained. The appellee knew when the demand for these policies was made that an accident had occurred which, if the policies were in force, would probably create

liability on the part of the insurance company. He withheld this information from the insurance agent and procured the issuance of policies on the 8th day of April, 1936, antedated January 16, 1936, without advising the insurance company or its agent of the material and important fact that an accident had occurred for which the insurance company might be held liable under the terms of the policies.

There are several questions presented but we think the controlling factors are (1) whether or not Kaleel, the attorney acting in this transaction, was Hoxie's agent and, if so, whether or not the procuring of these policies without advising the insurance company or its agent of the occurrence of the accident on April 2, 1936, was a fraud on the insurance company which would warrant cancellation of the policies. We think that the application of just one rule of law settles the first question. Kaleel was either the agent of Hoxie or else Hoxie had no negotiations with the insurance company about the issuance of the policies, because all the negotiations were conducted between Kaleel, as attorney and agent of Hoxie, and the agent for the insurance company. Hoxie depends upon the negotiations between Kaleel and the agent of the insurance company to bind the insurance company in this transaction and it is elementary that he cannot deny the agency and at the same time have the benefits of the fruits of the transaction negotiated in his behalf by the alleged agent.

Whether or not the policies issued on January 16th had been lawfully cancelled is not a question to be determined in this case because there is no effort here to have an adjudication as to that attempted or actual cancellation. When Kaleel, acting for Hoxie, accepted the policies which were delivered to him on April 8th, 1936, he was charged

with the knowledge of the contents of those policies and he knew, or should have known, that the policies purported to agree to indemnify the assured against liability for an accident which had already occurred, and of which he gave the insurance company no notice or information.

The principal, Hoxie, was bound by the conduct of his agent.

In Joyce on Insurance (1st Ed.) Vol. 1, page 159, Sec. 19, it is said:

"If the delivery be obtained by misrepresentation or fraud, it can have no effect as a binding contract, as in case the assured has knowledge of the loss at the time the application is made and conceals the fact."

In The Piedmont & Arlington Life Insurance Co. v. Ewing, etc., 92 U. S. 377, 23 L. Ed. 610, the Supreme Court of the United States held:

"While parties are still in negotiation as to the terms of a contract, one of them learning of a total change in the condition of the subject matter of the contract, of which the other is ignorant, cannot at that moment accept terms which he has refused before, and by doing so bind the party who had offered those terms when the condition of affairs was wholly different.

"Where there had been a dispute between the agent of an insurance company and the applicant for insurance, about the payment of the premium, and such dispute was not settled, a friend of the applicant could not pay such premium an hour or two before the death of the applicant, to such agent who was ignorant of the hopeless illness of the applicant, and thus secure a valid policy not delivered until after his death."

The case of Whitley v. The Piedmont & Arlington Life

Insurance Co., 71 N. C. 480, was a suit to collect the proceeds of a life insurance policy. In that case it was held:

"A policy of life insurance is not binding until the premium is paid—such a clause being contained in the application. And it is the duty of the assured to communicate to the Company any material change in his health in the interval between the application and the completion of the contract by the payment of the premium."

A concealment is material when the knowledge or ignorance of the fact involved will influence the judgment of the underwriter as to whether or not he will enter into the contract. See 32 C. J. 1271.

If the insured intentionally conceals facts which are material he is guilty of a fraud which may void the contract. 32 C. J. 1271; Clark, et al., v. The Manufacturers Insurance Company, 8 Howard 235, 12 Law Ed. 1061; Penn. Mutual Life Insurance Co. v. Mechanics Savings & Trust Co., 72 Ed. 413, 19 C. C. A. 286, 38 L. R. A. 33, O'Brien v. Ohio Insurance Co., 52 Mich. 131, 17 N. W. 726. See also Pelican v. Mutual Life Insurance Co. of New York, 44 Mont. 277, 119 Pac. 778, where it was held that concealment by insured of a fact material to the risk is equivalent to a false representation that the fact does not exist.

So, we must hold that the Chancellor misconceived the probative force of the evidence in this case.

Under the facts as disclosed by the record, the appellant was entitled to a cancellation of the policies involved here.

Whether or not there was a valid cancellation of the original policies issued is, as heretofore stated, not a question necessary to be determined in this suit.

The right to cancel the policies here involved is based upon the fact that these policies were procured by the con-

cealment of a fact, which if it had been known to the agent of the insurer might have precluded his issuing the same.

The decree is reversed and the cause remanded with directions that decree be entered not inconsistent with the views herein expressed.

So ordered.

Reversed and remanded.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.