DOWNEY, Judge.
This is a timely appeal from a final judgment allowing Aetna Insurance Company, appellee, to recover $36,691.43 plus costs from another insurer, C.A. Hansen Corporation, appellant, in a subrogation action.
Aetna filed suit as subrogee of A.D. Watson, seeking to collect full reimbursement, or in the alternative a proportionate contribution, of monies paid to A.D. Watson by Aetna under the terms of a marine insurance policy issued by Aetna to Watson covering a 1973, 58-foot, Hatteras motor vessel named “The Christine.” Contribution was sought pursuant to a policy of insurance allegedly obtained by Watson’s agents/representatives from C.A. Hansen covering the same motor vessel. Aetna alleged that at the time of loss dual coverage was afforded to Watson by virtue of each of the policies in question. The complaint described the theft of the motor vessel on or about September 13, 1979, and subsequent recovery of the vessel, which had been damaged in the amount of $68,-800.74. Payment was made by Aetna to Watson in that amount in accordance with the Aetna policy of insurance in effect at that time.
Hansen answered the complaint and the matter was submitted to the trial court for decision without a jury. All of the evidence was submitted by deposition, affidavit and documents; no live testimony was adduced. From a judgment in favor of Aetna for approximately one-half of the damages allegedly sustained by the boat, Hansen has perfected this appeal.
The evidence reflected that A.D. Watson, a resident of St. Louis, Missouri, owned the motor vessel in question and kept it docked behind his Florida home in Fort Lauder-dale. Watson and Gary Clamp had been in a business together buying, repairing and selling boats. At the pertinent times involved herein Clamp was renting Watson’s home in Fort Lauderdale and taking care of the Hatteras. Clamp called Watson and suggested that they should charter the Hatteras for a deep sea diving trip, to which Watson agreed. However, Watson admonished Clamp not to leave port without additional insurance because he thought the present coverage with Aetna only covered coastal waters. Later, Clamp notified Watson that he was having some difficulty obtaining the additional coverage so Watson obtained a rider on his Aetna policy for coverage while operating in the Caribbean.
Meanwhile, Clamp allegedly proceeded to negotiate a charter for deep sea diving *1331 with a man named Benson who was advised of the necessity of procuring additional insurance to cover the boat. Benson contacted C.A. Hansen Corporation and obtained coverage in Watson’s name for “anticipated fishing trips in Caribbean waters.” Watson understood from Clamp that the diving trip was going across the state and down toward Mexico, approximately 400 miles out. The next thing Watson heard, about four weeks later, was that the boat had been stolen and it was located in St. Marks, Florida. Watson travelled to St. Marks and found the boat in damaged condition in possession of customs authorities. The damage to the boat was surveyed by a registered firm and Aetna paid Watson $68,800.74 therefor. Aetna then pursued its subrogation rights against Hansen.
During the course of this suit the parties took the depositions of Watson and Benson. Clamp was not heard from because he has disappeared. Watson recounts the facts generally as above described, except lie never met Benson and thus has no personal knowledge of the Benson-Clamp dealing or the purpose and direction of the trip which took the Hatteras to St. Marks from Fort Lauderdale. Watson testified concerning the damage to the boat as compared with its condition about one month prior to the charter. Some of his testimony regarding the boat’s condition is certain and some is vague. By contrast, the deposition of Benson relative to the condition of the boat at the time of the charter is definite and certain. He testified the boat was in better condition when docked at St. Marks than it was when he took it over for the charter. He said the boat was initially in bad condition and that during the six week trip through the Caribbean and Gulf he spent more time repairing the boat than travel-ling.
With regard to the chartering of the boat and procuring the insurance coverage from Hansen, the direct evidence comes from Benson’s deposition and the affidavit of Hansen’s secretary-treasurer. At the time of his deposition Benson was under the protection of the Federal Witness Protection Program, having been granted immunity for testifying about this and other drug smuggling operations. He testified in deposition that he and Clamp decided to engage in drug smuggling during the summer and fall; that from the very beginning Clamp was a party to the smuggling plan. Clamp directed Benson to obtain the insurance coverage, which he did while the boat was broken down in Fort Myers, Florida. The boat left Fort Lauderdale on a trip to the Grand Cayman Islands to transport 6,000 pounds of marijuana to Tallahassee. With Benson and Clamp aboard, they crossed Florida from Fort Pierce to Fort Myers, where Clamp was apparently put off the boat because he was an alcoholic suffering from delirium tremens, and Benson would not allow any alcohol on the boat. From Fort Myers the Hatteras went west and south of Cuba to the Grand Caymans, picked up the contraband and took it to Tallahassee. Shortly thereafter, Benson was apparently caught by law enforcement people.
Benson testified that he called Hansen and ordered the insurance coverage for Watson’s boat. Marilyn Yeager, secretary-treasurer of C.A. Hansen Corporation, stated by affidavit that Watson’s representative gave Hansen the instructions for the insurance to cover the boat for fishing trips to occur in Caribbean waters while Captain F.J. Benson was in control of the boat. On this record we have no difficulty in holding that Hansen would not have bound the coverage had it been advised by Benson that the boat was to be used for smuggling. Thus, the concealment of this fact from Hansen was material and should avoid the contract. Massachusetts Bonding & Insurance Co. v. Hoxie, 129 Fla. 332, 176 So. 480 (1937).
One of the documents offered into evidence at one of the depositions was a lease of the Hatteras between Watson and Benson. Both of them testified their signatures had been forged to the document; neither had ever signed it. According to Benson, the lease had been prepared in *1332 case “they were caught, so the boat would be saved from forfeiture for Watson.
The trial court was thus presented with uncontradicted testimony that Clamp, who was either Watson’s partner or agent vis a vis the handling of the Hatteras, was a party to the entire drug venture. Watson directed Clamp to obtain insurance coverage. Clamp directed Benson to obtain it, and Benson obtained the coverage in question here. While Aetna contends there was no agency relationship between Watson and Benson, it is clear that there was because Clamp had full authority to charter the boat and was ordered to obtain the very coverage involved, and Benson obtained the insurance for Clamp. If Watson were the one claiming coverage under the Hansen policy certainly he could not successfully contend that any misrepresentations made by Benson in procuring the policy could not be visited on him. One who deals through an agent in making a contract will not be allowed to retain the favorable and reject the unfavorable part of the contract. Proodian v. Plymouth Citrus Growers Association, 152 Fla. 684, 13 So.2d 15 (1943); C.Q. Farms, Inc. v. Cargill Inc., 363 So.2d 379 (Fla. 1st DCA 1978); Massachusetts Bonding & Insurance Co. v. Hoxie, 129 Fla. 332, 176 So. 480 (1937). Likewise, Aetna, standing in Watson’s shoes as subrogee, cannot assume that position.
Remembering that the trial judge did not see or hear the witnesses in this case, we are not bound in our appellate review by the customary strictures regarding credibility and weight of the evidence. The general rule to the effect that a judgment entered by a trial court on evidence will on appeal be presumed correct until the presumption has been clearly overcome by the appealing party does not obtain to the same degree where the judgment is entered upon depositions, as it would where the trial court has seen and heard the witnesses testify. Sconyer v. Scheper, 119 So.2d 408 (Fla. 2d DCA 1960). See also West Shore Restaurant Corp. v. Turk, 101 So.2d 123 (Fla.1958); Harmon v. Harmon, 40 So.2d 209 (Fla.1949); Baker v. Baker, 388 So.2d 233 (Fla. 5th DCA 1980); Mills v. Ball, 380 So.2d 1128 (Fla. 1st DCA 1980); Mathews v. Kingsley, 100 So.2d 445 (Fla. 2d DCA 1958).
In view of the diminished presumption in favor of the trial court’s ruling, we hold the trial judge misconceived the legal effect of the evidence in this case in ruling in favor of Aetna. Accordingly, the judgment appealed from is reversed and the cause is remanded with directions to dismiss the complaint filed by appellee.
GLICKSTEIN, J., and GUNTHER, BOBBY W., Associate Judge, concur.