414 S.E.2d 452

**Sharron D. BROWN, as Administratrix of the Estate of Sidney D. Brown and as Next Friend of Decedent's Infant Daughters, Bethany Brown, Kelly Brown and Melissa Brown, Appellee,**

v.

**COMMUNITY MOVING & STORAGE, INC., a West Virginia Corporation, Roy W. McNemar, Appellees,**

**Home Insurance Company, a Foreign Corporation, Appellant.**

**No. 20271.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1992.

Decided Feb. 6, 1992.

---

Jeffrey V. Mehalic, Hostler & Segal, Charleston, for appellee, Sharron Brown.

Anita R. Casey, Robert P. Martin, Meyer, Darraugh, Buckler, Bebenek & Eck, Charleston, for appellant.

NEELY, Justice:

Sharron D. Brown brought suit against Community Moving & Storage, Inc. (Community Moving), Roy W. McNemar, and The Home Insurance Company (Home Insurance) in the Circuit Court of Harrison County for the wrongful death of Sidney D. Brown in a car accident. The circuit court denied Home Insurance's motion for summary judgment and granted Ms. Brown's motion for summary judgment, holding that Home Insurance had a duty to defend and indemnify Community Moving and Mr. McNemar. Home Insurance now appeals the summary judgment against it and the denial of its own motion for summary judgment. We reverse and remand with directions to enter summary judgment for Home Insurance.

## I.

Mr. Brown died as a result of an accident that occurred in Nicholas County on 21 July 1988. One of the other vehicles in the accident was owned by Community Moving, a furniture moving and storage company, and was operated by Mr. McNemar. From April 1988 until 21 July 1988, Community Moving had no motor vehicle insurance coverage. Shortly after the accident

occurred, Mr. McNemar called Mr. Leonard Papa, the President of Community Moving. Mr. Papa then "tracked down" the State Police and confirmed that Mr. Brown had died as a result of the accident.

Later that same afternoon, Mr. Papa telephoned Kathy Brooks, with whom he had previously discussed possible insurance coverage for Community Moving. Realizing that his company might be facing a lawsuit, Mr. Papa requested Ms. Brooks to obtain an insurance policy for Community Moving, and Ms. Brooks arranged coverage with Home Insurance. Mr. Papa did not mention the accident in his conversation with Ms. Brooks, and when Home Insurance requested confirmation from Community Moving, Community Moving submitted letters stating that there were no claims on the vehicles for which the company was seeking coverage. On 27 July 1988, when Home Insurance discovered that the accident had occurred, it informed Community Moving that it would not issue the policy.

## II.

### A.

The circuit court found that Ms. Brown was an innocent third-party beneficiary of the insurance policy. Ms. Brown argues that fraud and misrepresentation by Community Moving should not be grounds for denying her coverage.[1] However, plaintiff provides only one case (from Massachusetts in 1936) that is even remotely on point. In *Royal Indemnity Company v. Granite Trucking Company*, 296 Mass. 149, 4 N.E.2d 809 (1936), the Supreme Judicial Court of Massachusetts upheld coverage for an innocent third-party beneficiary despite fraud on the part of the insured. The *other* facts of *Royal Indemnity*, however, are significantly different from this case. Granite Trucking was covered up until shortly before the accident and had left a check with its insurance agent to reinstate its canceled policy or procure a

---

1. Ms. Brown's lawyer makes the somewhat disingenuous claim that Home Insurance's rights are not harmed by the circuit court's decision because Home Insurance will still have

its claims against Community Moving. However, it is obvious from the record that Community Moving has no money.

new policy elsewhere. Granite Trucking did this *before* the accident.

A more recent case, more directly on point, is *Mayflower Ins. Exchange v. Gilmont,* 280 F.2d 13 (9th Cir.1960). In *Mayflower,* the court found that the insurer was not liable to third-party passengers in an automobile accident when the insured had given false statements in order to obtain his insurance policy.[2]

## B.

This Court is not unsympathetic to innocent victims or overly sympathetic to insurance companies, but here we must draw the line. Home Insurance acted diligently and in good faith. It denied the policy as soon as it discovered the fraud by Community Moving and Mr. Papa. This is not a case of a motor carrier's fraudulently procuring insurance in order to operate on the highways of West Virginia. (Community Moving had been operating for several years.) This is simply a case in which Community Moving bought an insurance policy *after* the accident for which it desired coverage.

Generally, courts hold that fraud in the inducement is not grounds for voiding an insurance policy as to innocent third parties. *See, e.g., Allstate Ins. Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550 (1973); *Ferguson v. Employers Mut. Cas. Co.,* 254 S.C. 235, 174 S.E.2d 768 (1970); *State Farm Mut. Auto. Ins. Co. v. Wall,* 87 N.J.Super. 543, 210 A.2d 109 (1965). *See also* Annotation, "Recision or avoidance for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance," 83 A.L.R.2d 1104 (1962). However, none of these cases addresses the instant situation. The very fraud perpetrated in this case was the procuring of insurance for an accident that had already happened. Accordingly, we find that the policy was obtained fraudulently and, therefore, was void *ab initio. See Mayflower Ins. Exch. v. Gilmont,* 280

F.2d 13 (9th Cir.1960). *See also Strangio v. Consolidated Indemnity & Ins. Co.,* 66 F.2d 330 (9th Cir.1933); *Massachusetts Bonding & Ins. Co. v. Hoxie,* 129 Fla. 332, 176 So. 480 (1937).

## III.

For the foregoing reasons, the decision of the Circuit Court of Harrison County is reversed and this case remanded with directions to enter summary judgment for Home Insurance.

Reversed and remanded.

---

**2.** The policy in *Mayflower* was not obtained under a financial responsibility law as was the policy in this case. However, the effect is no different; Community Moving did not begin to operate on the highways of West Virginia upon the issuance of this policy. It had been operating on our highways for several years.