710 So.2d 984 (1998)
Douglas C. BILLIAN and Louise L. Billian, Appellants/Cross-Appellees,
v.
MOBIL CORPORATION, a Nevada corporation, Mobil Land Developmental Corp., a Delaware corporation, Sailfish Point, Inc., a Delaware corporation, Dune Realty Corporation n/k/a Sailfish Point Realty Corporation, a Delaware corporation, Appellees/Cross-Appellants, and
Donald Miller, Appellee.
No. 95-3837.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
Rehearing, Rehearing, Clarification and Certification Denied April 24, 1998.
*986 Thomas E. Warner of Warner, Fox, Seeley, Dungey & Sweet, Attorneys, P.A., Stuart, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach for appellants/cross-appellees.
Steven E. Stark, Michael B. Buckley and Uri Litvak of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Appellees/Cross-Appellants-Mobil Corporation, a Nevada corporation, Mobil Land Developmental Corp., a Delaware corporation, Sailfish Point, Inc., a Delaware corporation, Dune Realty Corporation n/k/a Sailfish Point Realty Corporation, a Delaware corporation.
Rehearing, Rehearing En Banc, Clarification and Certification Denied April 24, 1998.
GROSS, Judge.
The heart of this case involves the developer's purported failure to disclose to the buyers certain facts and defects concerning a condominium unit. The purchasers, Douglas and Louise Billian, sued the developer, Sailfish Point, Inc., and related entities for damages due to non-disclosure under Johnson v. Davis, 480 So.2d 625 (Fla.1985) and, alternatively, for the equitable remedy of rescission. They appeal a final judgment based on the jury's finding of no liability and on the trial court's denial of the rescission remedy. The appellees cross-appeal the denial of a directed verdict and other purported errors in the trial. We reverse because of an erroneous jury instruction under Johnson.
The Billians claimed that the developer concealed material defects in the condominium property regarding differential settling, exterior stucco delamination, erosion, and sound transmission problems. They argued that these defects greatly depreciated the value of the property and should have been disclosed to them before they contracted to buy the unit. At trial, there was conflicting evidence over the extent of the problems, whether any of the problems had materially affected the value of the property, and whether the developer knew or should have known about them. The jury found that no "fraudulent concealment" had occurred. After the verdict, the court held that because it was "bound" by the jury's verdict, it had no choice but to deny the rescission claim.[1]

Jury Instruction Under Johnson v. Davis

The Billians challenge two portions of the trial court's charge to the jury on the Johnson non-disclosure claim. In the jury instructions, the court characterized the issue as being "whether the Defendant[s] fraudulently concealed certain material facts." Generally, the court instructed the jury that to prevail, the Billians had to prove that the defendants intentionally failed to disclose facts materially affecting the value of the condominium. The court denied the Billians' request for an instruction defining a "material *987 fact" as "one that is of such importance that Mr. and Mrs. Billian either would not have entered into the transaction or would not have paid the same price for the unit."
The Billians argue that the court erred in denying their proposed jury instruction on a "material fact" under Johnson. The source of the proposed instruction was Standard Jury Instruction MI-8(d), the instruction for fraudulent misrepresentation, which defines a material fact as "one that is of such importance that [claimant] would not have [entered into the transaction][acted] but for the false statement."
The Billians' proffered instruction confuses the traditional action for fraudulent misrepresentation with a claim for non-disclosure under Johnson. That case narrowly tailors the definition of a "material fact" to limit the cause of action to non-disclosure of a more narrow class of facts than would be actionable in a case for fraudulent misrepresentation. The express holding of Johnson is
that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer.
480 So.2d at 629 (emphasis added). As crafted by the supreme court, the materiality of a fact is to be determined objectively by focusing on the relationship between the undisclosed fact and the value of the property. To be actionable, an undisclosed fact must materially affect the value of the property. Under the Billians' approach, the materiality of a non-disclosure would, in part, be determined subjectively, by measuring how disclosure would have affected their personal decision to purchase. Imposition of this standard would represent a departure from the express holding of Johnson.
The Billians rely on a portion of Dorton v. Jensen, 676 So.2d 437 (Fla. 2d DCA 1996), to support their position. However, they read that case too broadly. In Dorton, sellers of a home failed to disclose known high water problems to the buyers. When the buyers questioned the sellers about the need for flood insurance, one of them replied that "such coverage was unnecessary because she and her husband had never experienced high water at their home." Id. at 438. After closing, the buyers experienced severe flooding during heavy rains. They stopped making mortgage payments and filed suit, seeking rescission of the real estate transaction under Johnson.[2]
At trial, the sellers prevailed. The second district reversed, holding that the trial court had misapplied Johnson. After stating the rule of that case, the second district, at first blush, appeared to expand the rule of Johnson in its characterization of the holding, which relocates the term "material" and turns it from an adverb into an adjective:
It is clear, therefore, that a seller's liability under Johnson is measured against whether the seller possessed knowledge of material facts affecting the value of property which were not disclosed to an unsuspecting buyer.
Dorton, 676 So.2d at 439. However, the next sentence of the opinion makes it clear that the second district was not broadening the holding of Johnson:
The test for determining the materiality of a fact in transactions of this nature is whether that fact "substantially affects the value of the property."
Id. (quoting Revitz v. Terrell, 572 So.2d 996, 998 (Fla. 3d DCA 1990)). The reference in Dorton to the effect of the undisclosed facts on the buyers' decision to purchase is dicta, unnecessary to the holding under Johnson. For this reason, the Billians' reading of Dorton is incorrect. There is no conflict between that case and the result we reach here.
The Billians also contend that the trial court incorrectly charged the jury on a defendant's requisite state of mind in a cause of action for non-disclosure under Johnson. We agree.
On the Johnson non-disclosure claim, the trial court charged the jury as follows:

*988 In order to find for Plaintiffs on this claim, the Plaintiffs must prove by the greater weight of the evidence that the Defendant... intentionally failed to disclose facts regarding the condominium property of which it was aware and which would materially affect the value of the property, which were not observable or otherwise known by the Plaintiffs.
The Billians argue that the italicized portion of the instruction went beyond the requirements of Johnson and improperly directed the jury to focus on the defendants' state of mind. Appellees assert that the instruction properly educated the jury "on the intentional scienter aspect of the tort."
The insertion of the word "intentionally" into the jury charge was significant, since a primary thrust of the defense that the defendants lacked that evil state of mind indicative of fraud was based on the language of the instruction given by the court. For example, during closing argument, defense counsel framed the issue for the jury as
a fraud case. In this case you must find that, with regard to that nondisclosure, it was fraudulent. Remember, what I was telling you, it was intentional.... [The plaintiffs] have a burden of proof to show that this company ... fraudulently concealed, intentionally did not disclose facts which materially affected the value.
In discussing the facts, defense counsel emphasized the defendants' absence of bad intent with regard to any non-disclosure, by arguing that there was
nothing to suggest that Jharry Breed [general manager of Florida operations for one of the defendants] intentionally did anything wrong. There wasn't any fraud here. You may think that he was negligent in not disclosing it, but that is not the issue here.
Near the conclusion of his argument, defense counsel honed in on the state of mind issue by stating that
the Plaintiffs cannot meet their burden of proof, on the fraud case. Remember, this is not a negligence case. This is not a negligence case. This is standard fraud intentional fraudulent concealment.
Counsel tailored his argument to the wording of a general interrogatory on the verdict form which asked whether the defendants had committed "fraudulent concealment."
Other than requiring that the seller of a home have knowledge of facts materially affecting the value of property at the time the contract is formed, Johnson does not specify any state of mind element with regard to the act of non-disclosure for the cause of action it identifies. As we noted earlier, the express holding of Johnson is
that where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer.
480 So.2d at 629. Significantly, Johnson casts the cause of action in terms of "duty," a concept drawn from the law of negligence. If the facts of a case give rise to a duty to disclose under Johnson, the seller's state of mind motivating the failure to disclose is immaterial; the forgetful or unsophisticated seller is just as liable as the knowing dissembler.
Johnson carved out of the law of fraud a unique place for non-disclosure cases involving the sale of a home. A traditional cause of action for fraud turns in large part on the state of mind of the tortfeasor. For example, in a fraudulent misrepresentation case, a plaintiff must prove that a defendant knew a statement was false or that the defendant made a statement knowing he was without knowledge of its truth or falsity; in addition, the plaintiff must demonstrate that in making a false statement, the defendant intended that another rely upon it. See, e.g., Fla. Std. Jury Instr. (Civ.) MI-8.
Unlike the cause of action for fraudulent misrepresentation, a non-disclosure case under Johnson does not focus on the seller's state of mind motivating the non-disclosure. Johnson creates a duty to disclose where a seller knows of certain facts under circumstances giving rise to the duty. The factfinder is not required to delve into the murky area of the seller's intent underlying a nondisclosure. In this regard, the state of mind *989 requirement under Johnson is analogous to that in a negligent misrepresentation case, where one who "supplies false information" exposes himself to liability if "he fails to exercise reasonable care or competence in obtaining or communicating the information." Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 337 (Fla.1997) (quoting Restatement (Second) of Torts § 552 (1977)). The practical effect of Johnson is to encourage disclosure in those transactions where a seller might be in doubt as to whether a set of facts should be revealed to potential buyers.
Nothing in the supreme court's holding in Johnson indicates that actionable non-disclosure must be accompanied by the same intent to defraud required in other types of fraud cases. See Cohen v. Vivian, 141 Colo. 443, 349 P.2d 366 (1960); Thacker v. Tyree, 171 W.Va. 110, 297 S.E.2d 885 (1982). Johnson is consistent with the modern view that the theoretical basis of liability for non-disclosure is not an outgrowth of the law of fraud, where a non-disclosure of material information would be characterized as a type of misrepresentation. Over 60 years ago, Dean Keeton articulated the principle upon which Johnson is founded:
[I]t would seem that the object of the law in [non-disclosure] cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it.... This duty to speak does not result from an implied representation by silence, but exists because a refusal to speak constitutes unfair conduct.... The question is one of fair conduct, just as negligence is a question of fair conduct.
W. Page Keeton, Fraud Concealment and Non-Disclosure, 15 Tex. L.Rev. 1, 31-32 (1936). The supreme court in Johnson acknowledged its departure from outdated concepts contained in the law of fraud when it observed that "[t]he law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it." 480 So.2d at 628; see Gilchrist, 696 So.2d at 339.
Because the instruction on non-disclosure incorrectly included a state of mind component not required by Johnson, reversal is mandated. Contrary to appellees' contention, a cause of action for non-disclosure under Johnson does not contain an "intentional scienter aspect." An instruction
which tends to confuse rather than enlighten the jury is cause for reversal if it may have misled the jury and caused them to arrive at a conclusion that otherwise they would not have reached.
Allstate Ins. Co. v. Vanater, 297 So.2d 293, 295 (Fla.1974).

The Relationship Between Rescission and an Action For Damages under Johnson v. Davis

The trial court concluded that its consideration of the rescission count was foreclosed by the jury's decision on the Johnson claim. Since the same issue may arise on retrial, it is necessary to examine the interplay between the equitable remedy of rescission and an action at law for damages based on fraud when both are raised in the same complaint.
The trial court's conclusion that it did not have the discretion to grant rescission because it was bound by the jury's determination that there had been no non-disclosure under Johnson would have been correct if that had been the only basis for rescission established by the evidence in the case. However, the trial court retained the discretion to grant rescission if it determined that the plaintiffs had established the elements for granting rescission under a theory of nondisclosure not based on Johnson, which was properly raised in the pleadings and not in conflict with the jury's findings of fact.
There is authority in Florida stating that rescission is available for fraudulent non-disclosure under narrow circumstances where a Johnson claim will not lie. To be actionable, a non-disclosure under Johnson must be of a fact "materially affecting the value of the property." Florida Supreme Court cases indicate that rescission is also proper where there has been intentional concealment of any fact material to the transaction, not just a fact materially affecting the value of property as is required by *990 Johnson. In Hirschman v. Hodges, O'Hara & Russell Co., 59 Fla. 517, 51 So. 550, 554 (1910), the supreme court cited the following paragraph from Stephens v. Orman, 10 Fla. 9, 86-87 (1862):
It is well settled that a suppression of truth, or suggestion of what is not true in some material point, will be ground for setting aside any contract.... Again, concealment of a material fact by a party to a contract is ground for relief, where he had better opportunity to know than the other; but where the facts lie equally open to the vendor and vendee with equal opportunity of examination, and the vendee undertakes to examine for himself, without relying upon the vendor's statements, it is no evidence of fraud that the vendor knew facts not known to the vendee, and does not make them known to him.
(Emphasis supplied). See also Robson Link & Co. v. Leedy Wheeler & Co., 154 Fla. 596, 18 So.2d 523, 532 (1944);[3]Massachusetts Bonding & Ins. Co. v. Hoxie, 129 Fla. 332, 176 So. 480, 482 (1937); Harrell v. Branson, 344 So.2d 604, 607 (Fla. 1st DCA 1977). Under this basis for rescission, a concealed fact is material to a transaction if the plaintiff would not have entered into the contract but for the concealment. See Massachusetts Bonding, 176 So. at 482; Ribak v. Centex Real Estate Corp., 702 So.2d 1316 (Fla. 4th DCA 1997). Intentional concealment of a fact material to a transaction under Stephens was not necessarily foreclosed by the jury's verdict on the Johnson claim in this case. For example, a condominium unit's sound transmission problems might not significantly impact the value of the unit. However, where a buyer has made his desire for silence paramount, a seller's intentional concealment of noise problems could give rise to a claim for recission under Stephens.
The inclusion of equitable claims with actions at law in the same complaint presents the difficult issue of how to harmonize a jury's findings of fact with a court's ability to grant equitable relief. To place the issue in context, it is instructive to examine the rescission remedy and a body of case law, that, in certain circumstances, requires a judge to follow a jury's factual finding in deciding whether to grant equitable relief.
Rescission is an equitable remedy. See Willis v. Fowler, 102 Fla. 35, 136 So. 358, 367-69 (1931); Davis v. McGahee, 257 So.2d 62, 63 (Fla. 1st DCA 1972). The prime object of rescission is "to undo the original transaction and restore the former status" of the parties. Willis, 136 So. at 369. To accomplish this result, a court of equity may use broad powers unavailable when a judgment is based on an action at law. Where the remedy is justified because fraud has been established, a court
may set aside all transactions founded on it, however they may have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them, and may also treat acts as having been done which ought to have been done, and convert the party who has committed a fraud and profited by it into a trustee for the injured party.
Willis, 136 So. at 368 (citing Black, Rescission, § 643). As part of the relief granted in rescission, a court may impose an equitable lien. See International Realty Assocs. v. McAdoo, 87 Fla. 1, 99 So. 117 (1924). An important weapon in a court's arsenal in fashioning the rescission remedy is the power to enforce its orders through contempt. For example, as the supreme court observed in Pepple v. Rogers, 104 Fla. 462, 140 So. 205, 209 (1932), a law court cannot require the surrender or cancellation of a note or restrain the negotiation of it.
Rescission is not available as a matter of right. Relief by way of rescission
lies within the sound discretion of the [trial] court, to be exercised according to what is reasonable and proper under the circumstances of each particular case; and the court will, in granting relief, impose such terms as it deems the real justice of the case to require, the maxim being emphatically *991 applied, he who seeks equity must do equity.
International Realty, 99 So. at 119; see also Rood Co. v. Board of Public Instruction of Dade County, 102 So.2d 139, 142 (Fla.1958) (rescission is a harsh remedy which a court of equity will not grant unless "it clearly appears that the claimant is entitled thereto and has not by his own conduct waived his right to the relief claimed").
The second district has identified those factors that must appear in a complaint to state a cause of action for rescission of a contract:
(1) The character or relationship of the parties;
(2) The making of the contract;
(3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation;
(4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission.
(5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible;
(6) Lastly, that the moving party has no adequate remedy at law.
Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc., 174 So.2d 614, 617 (Fla. 2d DCA 1965).[4]
Before Florida adopted its modern rules of civil procedure, courts of law were separate from courts of equity. Equitable and legal actions were not tried together. At the pleading stage of a case, an equity court would determine whether to exercise its jurisdiction by examining the extensively detailed allegations of the bill of complaint. See, e.g., Willis, 136 So. at 363 (appeal from trial court order sustaining defendants' demurrer and dismissing the case). The primary inquiry for the equity court in deciding whether to keep the case was often whether the plaintiff had an adequate remedy at law. Where fraud was involved, Florida followed the rule that there was concurrent jurisdiction between law and equity courts; where rescission was grounded upon some type of fraudulent conduct, the mere existence of a potential action at law did not amount to an "adequate remedy at law" which deprived equity of jurisdiction. Id., 136 So. at 367.[5] Nonetheless, to be entitled to the equitable relief of rescission, a plaintiff had to establish in the bill of complaint "that the legal remedy would not be full and complete." Id. at 368. This element of a rescission claim survives today.
In 1967, Florida adopted rules of civil procedure which gave the circuit courts jurisdiction to hear cases in which counts at law and counts in equity were pled in the same complaint as alternative grounds for relief. In re Florida Rules of Civil Procedure 1967 Revision, 187 So.2d 598, 600 (Fla.1966); Ch. 67-254, Laws of Fla.; Fla.R.Civ.P. 1.040, 1.110(g). Today's pleading rules require only "a short and plain statement of the grounds upon which the court's jurisdiction depends... [and] a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla.R.Civ.P. 1.110(b). As a result, a court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed. A ruling on the adequacy of the legal remedy is generally left until the end of a case, often after a jury renders a verdict on the entitlement to it.
*992 Another factor proscribing the preemptive granting of equitable remedies in cases where legal and equitable causes of action are intertwined in the same complaint is that a litigant in a law case has a right to a jury trial which is guaranteed by Article I, Section 22 of the Florida Constitution. Unless waived, a jury must make findings concerning all facts which are common to the legal and equitable claims before the trial court may consider granting an equitable remedy. See Adams v. Citizens Bank of Brevard, 248 So.2d 682 (Fla. 4th DCA 1971); Hall v. Brooksville Glass, 586 So.2d 1306, 1308 (Fla. 5th DCA 1991); Dykes v. Trustbank Sav., F.S.B., 567 So.2d 958, 959 (Fla. 2d DCA 1990); Spring v. Ronel Refining Inc., 421 So.2d 46 (Fla. 3d DCA 1982); Padgett v. First Fed. Sav. & Loan Ass'n of Santa Rosa County, 378 So.2d 58, 63 (Fla. 1st DCA 1979). Where the fact issues decided by a jury in an action at law are sufficiently similar to the fact issues on a related equitable claim, the trial court is bound by the jury's findings of fact in making its ruling on the equitable claim. See Adams, 248 So.2d at 684; Marshall v. Sprecher, 559 So.2d 1280, 1281 (Fla. 2d DCA 1990); Chenery v. Crans, 497 So.2d 267, 269 (Fla. 2d DCA 1986). Legal and equitable issues are "sufficiently similar" or "intertwined" if a jury, in order to return a verdict in an action at law, would necessarily have to decide a fact issue of the legal claim which is also a required element of an equitable claim.
After the jury's verdict in this case, the trial court ruled that it was precluded from granting the equitable remedy of rescission because it was bound by the jury's factual finding that there was no fraudulent nondisclosure under Johnson. However, while the trial court was correct in concluding that it was bound by the jury's finding of fact, had the jury been properly charged, it would not have been foreclosed from fashioning equitable relief under a theory of non-disclosure apart from Johnson.
As was demonstrated above, the remedy of rescission may be available for fraudulent non-disclosure under Stephens where recovery is unavailable under Johnson. In this case, the question posed to the jury on the verdict form was a general one did the defendants "commit fraudulent concealment?" The jury could have rendered a defense verdict where all but one of the elements of a Johnson claim had been established. The jury's answer of "no" to such a general question would preclude the judge from granting rescission under Johnson. However, the jury's answer to such a general interrogatory would not bar the judge from considering the equitable remedy on the theory of intentional concealment under Stephens, since the jury was not necessarily required to decide the elements of a Stephens claim in order to render its verdict on the Johnson aspect of the lawsuit.
The interplay between equitable and legal causes of action depends on how the case is submitted to the jury in a verdict form. Carefully drafted special interrogatories will greatly assist the trial court in handling an equitable claim after the jury has decided an action of law. The better practice is to have the jury make a separate finding as to each element of a cause of action at law. For example, if the jury were to answer a specific interrogatory that no non-disclosure of any kind occurred, such a finding would preclude rescission based on any non-disclosure theory. If, on the other hand, the jury's findings were that the defendant knew of a defect in the property, that he failed to disclose it, and that the defect was not readily observable nor known to the buyer, but that it did not materially affect the value under Johnson, then a trial court could still grant rescission if it found an intentional concealment of a fact which was material to the transaction in some way, but which did not substantially effect the value of the property.

Cross-Appeal
On the cross-appeal, we agree with appellees' point that in a non-disclosure case, punitive damages are appropriate only if the jury finds that the most aggravated form of non-disclosure has occurred that the defendants made a deliberate and knowing concealment designed to cause, and actually causing, detrimental reliance by the plaintiff. See First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla.1987); Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. *993 214 (1936). On the other points raised, we affirm the rulings of the trial court.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
POLEN, J., and PARIENTE, BARBARA J., Associate Judge, concur.
NOTES
[1] The trial court stated that

if the jury's verdict were not binding on me ... I would certainly give very serious consideration to granting an equitable remedy here because I do take ... a differing version of some of the facts that the jury heard, and the jury apparently took a different view of that.
[2] Prior to trial, the Dortons abandoned their claims based on fraudulent and negligent misrepresentation. Dorton v. Jensen, 676 So.2d 437, 439, n. 2. (Fla. 2d DCA 1996).
[3] In arguing for rescission, the Billians cited to Robson Link & Co. v. Leedy Wheeler & Co., 154 Fla. 596, 18 So.2d 523 (1944).
[4] Because the trial court ruled that it was bound by the jury's finding of no fraud under element (3), it did not address elements (4)-(6) and we do not consider their applicability in this opinion.
[5] In Willis v. Fowler, 102 Fla. 35, 136 So. 358 (1931), the supreme court described two actions at law available to one fraudulently induced to enter into a contract. First, one could disaffirm the contract and maintain an action "in general assumpsit for money had and received," which could be proved by evidence "showing that the defendant has possession of money of the plaintiff which in equity and good conscience he ought to pay over." 136 So. at 367; see Commerce Partnership v. Equity Contracting Co., Inc., 695 So.2d 383, 387 (Fla. 4th DCA 1997). Second, the plaintiff could retain what he received under the contract and sue in tort to recover damages for fraud or deceit. Id.; see also Hauser v. Van Zile, 269 So.2d 396, 398 (Fla. 4th DCA 1972).