DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JESSICA MARLETTE,

Petitioner,

v.

ROXANNE M. CARULLO,

Respondent.

No. 2D22-547

_____

September 30, 2022

Petition for Writ of Certiorari to the Circuit Court for Hillsborough County; Paul Huey, Judge.

Sheila M. Lake of Lake Law Firm, P.A., St. Petersburg, for Petitioner.

No appearance for Respondent.

VILLANTI, Judge.

Jessica Marlette petitions this court for certiorari review of the trial court's January 23, 2022, order granting Roxanne M. Carullo's ore tenus motion to bifurcate the legal and equitable issues for trial

in the action below. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(2)(A). Because the trial court departed from the essential requirements of the law, as discussed below, we grant Marlette's petition and quash the January 23, 2022, order with regard to the bifurcation of issues only.

## I.

Marlette and Carullo own adjoining properties in Odessa, Hillsborough County, Florida. The properties were at one time owned together as one contiguous property by Thomas and Venetta Colson.[1] The Colsons built a home on the property now owned by Marlette. Over the years, they also installed on their property an unpaved driveway and an underground well to supply their home with water.

In 1995, the Colsons sold the parcel now constituting Carullo's property to Nicholas and Shirley Carullo, respondent Carullo's in-laws. In 1997, the Colsons sold the property now

---

[1] The Colsons originally owned three parcels: Lots 47, 48, and 49. They lived on all three as one contiguous property, and later split the three lots evenly between the Carullos and Alderman. Marlette's property is Lot 49 and the east half of Lot 48. Carullo's property is Lot 47 and the west half of Lot 48.

constituting Marlette's property to Ronald Alderman. At around that time, it was discovered that the two parcels had been incorrectly divided and that the driveway and well installed by the Colsons years earlier, which were intended for the benefit of the property owned by Alderman (and subsequently Marlette) encroached upon the Carullos' property. Thus, Alderman and the Carullos executed an easement agreement (the Agreement), granting Alderman a "perpetual easement on, over, under and across [the Carullos'] Property for the continued use, operation and maintenance of the well and driveway as constructed and maintained by [Alderman] as of the date of the execution of this Easement." Pursuant to the Agreement, the easement was to "run with the land in perpetuity" and "bind and inure to the parties, their successors, and assigns and legal representatives" unless terminated in writing by both parties and recorded in the official records of Hillsborough County. The Agreement was executed on May 8, 1997, and recorded in the Hillsborough County official records on May 22, 1997.

Alderman's mortgagor, Wells Fargo, foreclosed upon his parcel in 2010 and took title to the property following the foreclosure sale.

3

Wells Fargo subsequently sold the property to Marlette, also in 2010. The Carullos conveyed their property to respondent Carullo in 2018. Carullo's property was vacant until July 2020, when construction of her home commenced.

Marlette alleges that in 2019, apparently in anticipation of constructing her home, Carullo confronted Marlette's husband about their use of the driveway and threatened to tap into the well and "run it dry," thereby forcing Marlette to move it. Carullo also applied for a septic permit that contained a diagram of the intended septic tank accessing the existing well. Marlette, fearing that Carullo intended to utilize the existing well for the new septic tank rather than installing her own, contacted Environmental Health Services (EHS), the state agency charged with issuing septic tank permits. She provided EHS with a copy of the Agreement and was advised that the septic tank permit would not be approved until the easement dispute is resolved.

Marlette also alleges that Carullo deliberately parks her vehicles in the driveway in such a manner that it blocks Marlette and her husband from accessing their property and has verbally threatened and harassed them in an effort to prevent them from

4

using the driveway. Hearing transcripts from the proceedings below reflect that Carullo has on numerous occasions parked her vehicle on Marlette's property, directly behind Marlette's vehicle, to "block" her into her backyard.

In November 2020, Marlette filed an eight-count lawsuit against Carullo, seeking declaratory judgments of easement rights under the Agreement with regard to the well and driveway, declaratory judgments in the alternative for prescriptive easements with regard to the well and driveway, permanent injunctions with regard to the well and driveway, breach of the Agreement, and nuisance. The trial court entered a temporary injunction prohibiting either party from blocking the other's use of the driveway or preventing ingress/egress upon same. The trial court further ruled that Marlette's easement rights pertaining to the driveway were nonexclusive and that the easement was intended to grant her access to her lot because there was no room for a driveway on the other side of her property. It was established at the injunction hearing that the driveway is Marlette's sole access to her carport, which is located at the back of her property. The trial court also reserved ruling on all issues pertaining to the well until further

5

fact-finding could be made regarding the well's condition and capacity.

In June 2021, Marlette amended her complaint to add a count of trespass and a count for damages by diminution of value. The trial court set a two-day jury trial for November 2021, which was subsequently continued to January 2022 upon stipulation of both parties. In the meantime, after a hearing in December 2021, the trial court granted Carullo's motion for judgment on the pleadings with regard to Marlette's claims for a declaratory judgment for exclusive easement rights of the driveway and for prescriptive easements for the driveway and for the well.

When the parties convened for trial on January 10, 2022, Carullo made her ore tenus motion to continue trial again due to the unavailability of witnesses[2] and to bifurcate the legal and equitable issues. The trial court granted the ore tenus motion, noting in its written order that with regard to the latter, the trial court is the appropriate factfinder for Marlette's claims for injunctive and equitable relief.

---

[2] Two essential witnesses were reported to have Covid, and an expert witness had a family emergency.

A party "seeking a writ of common law certiorari must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal." *Rogan v. Oliver*, 110 So. 3d 980, 982 (Fla. 2d DCA 2013) (quoting *Parkway Bank v. Fort Myers Armature Works, Inc.,* 658 So. 2d 646, 648 (Fla. 2d DCA 1995)). "The second and third elements are jurisdictional, and the failure to establish those elements requires dismissal of the petition without considering the merits." *Choi v. Auto-Owners Ins. Co.,* 224 So. 3d 882, 883 (Fla. 2d DCA 2017).

The relevant transcript reflects that the trial court ordered bifurcation of the equitable and legal issues out of concern about available jury trial dates and the parties' evident discord affecting their respective access to their properties and to water via the well. Marlette argues, however, that bifurcating the issues below departs from the essential requirements of the law because the facts underlying both are inextricably intertwined and that trying the issues separately may lead to inconsistent verdicts or preclude the jury from deciding the legal claims of the case altogether.

A trial court generally has broad discretion to sever or bifurcate claims to avoid inconvenience or prejudice to a party pursuant to Florida Rule of Civil Procedure 1.270(b). *See Rooss v. Mayberry,* 866 So. 2d 174, 176 (Fla. 5th DCA 2004). However, "[w]here the facts and issues underlying the claims are intertwined, the trial court should conduct a single trial." *Bethany Evangelical Covenant Church of Miami, Fla., Inc. v. Calandra,* 994 So. 2d 478, 479 (Fla. 3d DCA 2008); *see also Rooss,* 866 So. 2d at 176 ("[B]ecause the issues . . . in this case are related and necessarily have an 'important bearing' on one another, a unified trial is required to affect substantial justice."). While the trial court's concern for efficiency is evident, the proper procedure instead is for the trial court to first proceed with the jury trial, and then to apply the jury's factual findings to determine whether Marlette has established entitlement to her equitable claims. *See Kavouras v. Mario City Rest. Corp.,* 88 So. 3d 213, 214 (Fla. 3d DCA 2011).

"Certiorari is an appropriate remedy for orders severing or bifurcating claims which involve interrelated factual issues because severance risks inconsistent outcomes." *Choi,* 224 So. 3d at 883 (quoting *Minty v. Meister Financialgroup, Inc.,* 97 So. 3d 926, 931

8

(Fla. 4th DCA 2012)); *see also Ludeca, Inc. v. Alignment & Condition Monitoring, Inc.,* 276 So. 3d 475, 481 (Fla. 3d DCA 2019) ("[A]s the claims are necessarily intertwined, bifurcation threatens inconsistent outcomes and could serve to eviscerate petitioner's cause of action.").  Marlette argues that her claims—aside from those for a prescriptive easement[3]—all arise from the Agreement and that trying the equitable and legal claims separately poses the threat of inconsistent verdicts because the same evidence is needed to establish her claims in both trials.  She contends that the exhibits and witnesses she must present to establish her claim for injunctive relief are the same as needed to substantiate her legal claims of breach of contract, nuisance, and trespass.  Because the majority of Marlette's claims indeed arise from or substantially

---

[3] To establish a prescriptive easement, the claimant must show the following: (1) actual, continuous, and uninterrupted use by the claimant or any predecessor in title for twenty years; (2) that use has been either with the actual knowledge of the owner or so open, notorious, and visible that knowledge of the use is imputed to the owner for twenty years; (3) that the use was of a definite route; and (4) that use has been adverse to the lawful owner for twenty years.  *See Dana v. Eilers,* 279 So. 3d 825, 827–28 (Fla. 2d DCA 2019).  The trial court entered judgment on the pleadings in favor of Carullo on Marlette's prescriptive easement counts based on the existence of the executed and recorded Agreement.

9

involve the easement rights in the Agreement, fact-finding for both legal and equitable issues would involve common witnesses and exhibits that would, for example, establish a foundation for the original placement and use of the driveway and well, the division of the parcels, and the execution and intent of the Agreement by the Carullos and Alderman. It is clear that the underlying facts of both legal and equitable claims here are intertwined and that the trial of such claims separately may lead to inconsistent verdicts. Thus, certiorari review is appropriate in this case. *See Choi,* 224 So. 3d at 884.

Further, the order on appeal set the nonjury trial for equitable issues for March 2021, with the jury trial on legal issues to take place at a later date. However, litigants have the right to a trial by jury guaranteed by article I, section 22 of the Florida Constitution. "Unless waived, a jury must make findings concerning all facts which are common to the legal and equitable claims before the trial court may consider granting an equitable remedy." *Billian v. Mobile Corp.,* 710 So. 2d 984, 992 (Fla. 4th DCA 1998). "[I]t is well settled that where mixed equitable and legal claims are presented on interrelated facts, the trial court first must have a jury decide the

case so as to preserve the parties' right to a jury trial." *Kavouras,* 88 So. 3d at 214. And when the issues of fact decided by a jury in an action at law are inextricably woven with the issues of fact in an equitable claim, the trial court is bound to the findings of fact by the jury. *Billian,* 710 So. 2d at 992; *cf. Marshall v. Sprecher,* 559 So. 2d 1280, 1281 (Fla. 2d DCA 1990) ("A threshold factual determination by the trial court in the equitable aspect of this matter, i.e. that the covenant was or was not breached, would bind a subsequent jury through collateral estoppel and thus deny the defendant a trial by jury in the resolution of the claim for damages."). "[W]here a determination by the first factfinder would necessarily bind the later factfinder, such issues may not be tried non-jury by the court because to do so would deprive the litigant of his constitutional right to trial by jury." *Magram v. Raffel,* 443 So. 2d 396, 397 (Fla. 3d DCA 1984).

Marlette did not waive her constitutional right to a jury trial—in fact, she made a timely request for trial by jury on all triable issues. Therefore, the trial court's order to bifurcate poses the risk of violating Marlette's right to a jury trial if the trial court makes findings of fact that preclude a jury from deciding her legal claims.

11

This constitutes a departure from the essential requirements of the law resulting in a material injury that cannot be remedied on appeal.

## III.

Because Marlette has sufficiently established that the trial court's order bifurcating her claims constitutes a departure from the essential requirement of the law that claims involving intertwined issues of fact may not be severed and that trying such claims separately may result in material injury that cannot be corrected on postjudgment appeal, certiorari review is appropriate in this case. We grant Marlette's petition and quash the January 23, 2022, order with regard to its bifurcation of issues.

Petition granted, order quashed.

NORTHCUTT and SLEET, JJ., Concur.

_____

Opinion subject to revision prior to official publication.