## Case No. 18,201.

### ZANE v. The PRESIDENT.

[4 Wash. C. C. 453.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1824.

LIEN OF MATERIAL MAN—FOREIGN VESSEL—EFFECT OF GIVING CREDIT.

1. If the subject matter of a contract concern the navigation of the sea, it is a case of admiralty and maritime jurisdiction; although the contract be made on land. Such are the contracts of material men.

[Cited in The Gold Hunter, Case No. 5,513; Leland v. The Medora, Id. 8,237; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 421.]

2. How far the district courts, sitting as instance courts, are to regard the law of the admiralty court of England as to questions of jurisdiction and rules of decision.

[Cited in The Stephen Allen, Case No. 13,361; Waring v. Clarke, 5 How. (46 U. S.) 474.]

3. By the common law, material men have no lien for articles furnished a vessel, whether she be foreign or domestic; and this is the law of the English admiralty. By the civil law they have such a lien in both cases. In the United States they have it only in cases of foreign ships; or ships belonging to one of the states furnished in another.

[Cited in The Boston, Case No. 1,669; U. S. v. New Bedford Bridge, Id. 15,867; Nall v. The Illinois, Id. 10,005; Cox v. Murray, Id. 3,304; The Alida, Id. 199; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 390; The Wexford, 7 Fed. 681.]

4. But if the person furnishing a foreign ship gives credit, the lien is discharged, or does not attach. Water casks furnished to a foreign vessel, are of the nature of materials which create a lien.

[Cited in Maitland v. The Atlantic, Case No. 8,980; Raymond v. The Ellen Stewart, Id. 11,594.]

5. But although the giving of credit may so far discharge the lien as to exclude the material man from bringing a suit in rem to enforce it, or from his being a privileged creditor, still he is entitled upon petition to be paid out of remnants and surplus remaining in the registry.

[Cited in The Santa Anna, Case No. 12,325; The Boston, Id. 1,669; The Lady Franklin, Id. 7,983.]

This was an appeal from the district court, where the appellant filed a petition praying to be paid the sum of $408.10 cents, due to him for a certain number of water casks, and two barrels of vinegar, furnished the brig President, at Baltimore, where she then lay, in October, 1821, as part of her outfits. The brig having performed a voyage from Baltimore, after the above articles were furnished, returned the following year to the port of Philadelphia, where she was libelled for sailors' wages, and sold under a sentence of the district court. The petition is, to be paid out of the surplus of the proceeds of the brig, her tackle, &c. remaining in the

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

registry of that court, after payment of the wages, &c. From the evidence of Dieter, taken in this court, it appears that this was a foreign vessel, owned by persons residing beyond sea, and was commissioned as a letter of marque. That whilst lying in the port of Baltimore, in October, 1821, Zane furnished the brig with the water casks and vinegar, at the instance of Dieter, who acted as the agent of the owners, he being a part owner, and, at that time, master. That no written or specific contract respecting these articles was made, except that the master promised to pay for them upon the return of the brig, or upon his own return. That the casks were calculated only for the brig, and as a part of her equipment, and were not more in number than her necessities demanded. The cost of the articles so furnished amounted to $508.10 cents, of which $100 was paid by Dieter in July, 1822, after the arrival of the brig at the port of Philadelphia.

A pro forma decree of the district court was made, dismissing the petition, from which decree the appeal was taken.

The following objections to the claim of the petitioner were made in this court: (1) That the debt claimed never created a lien on the vessel, inasmuch as the articles furnished were to be paid for on the return of the vessel, or of Dieter; and were therefore furnished on the personal credit of the master and the owners, and not on the security of the vessel. (2) That if there ever existed a lien, it was waived by the omission of the petitioner to enforce it in due season. (3) That the articles furnished are not such as entitle the creditor to a lien on the vessel. (4) That if there be no lien, the creditor can have no claim even against a surplus remaining in the registry of the admiralty. 1 Holt, Shipp. 390, 391; 2 Show. 338; Salk. 34; 2 P. Wms. 367; Abb. Shipp. 135, 154; 7 Term R. 312; 9 East. 420; Gardner v. The New Jersey [Case No. 5,233]; 5 Rolle, Abr. 92; Bull. N. P. 45; Ex parte Lewis [Case No. 8,310]; Jac. Sea Laws, 6, 12. 354; 1 Term R. 108; 7 East. 5; 1 East, 4; 3 Term R. 119; 6 Term R. 25.

For the appellant the following cases were cited: [The General Smith] 4 Wheat. [17 U. S.] 438; [The Aurora] 1 Wheat. [14 U. S.] 96; The Jerusalem [Case No. 7,294]; North v. The Eagle [Id. 10,309]; 4 Law J. 101; Gardner v. The New Jersey [Case No. 5,233], note; Abb. Shipp. 135, 153; De Lovio v. Boit [Case No. 3,776]; Poth. Hypo. p. 117, c. 1, art. 3; Id. p. 176, c. 2, § 3; Code Nap. bk. 3, p. 226, tit. 18, c. 3, § 1, pl. 3; Id. § 2, pl. 4; 4 Griff. Law Reg. 728, p. 14; The John. 3 C. Rob. Adm. 288; The Favourite, 2 C. Rob. Adm. 236; 2 Brown. Civ. & Adm. Law, 81, 95; The Sybil, 4 Wheat. [17 U. S.] 98; Gardner v. The New Jersey [supra].

C. J. Ingersoll, for appellant.

J. R. Ingersoll, for appellee.

WASHINGTON, Circuit Justice, (after stating the case as above). That this is a case of maritime contract, of which the admiralty has jurisdiction, is not disputed by the counsel for the appellee. Although it was made at land, infra corpus comitatus, yet the subject matter of it concerned the navigation of the sea, and it is consequently maritime in its nature. This point, if it were not conceded, is conclusively settled by the following cases: The General Smith, 4 Wheat. [17 U. S.] 438; The Aurora, 1 Wheat. [14 U. S.] 96; The Jerusalem [Case No. 7,-294]; Gardner v. The New Jersey [Id. 5,-233]; Stevens v. The Sandwich [Id. 13,409], note; North v. The Eagle [Id. 10,309]. The question, in short, which this court has to decide, is not of jurisdiction, but of lien, or an equitable claim against the proceeds of the vessel remaining in the registry of the court, and unclaimed by any other persons than the former owners of the vessel. The case of material men being then within the undisputed jurisdiction of the admiralty, it becomes important to inquire by what law their claim is to be decided? If by the civil law, which, with the laws of Oleron and Rhodes, furnish the general rules of decision of the admiralty court, where they are not inconsistent with the municipal laws of the country to which the court belongs, then it is indisputable that those who repair, or fit out a vessel, or who lend money for those purposes, possess a right of payment in preference to other creditors upon the value of the ship, without any express hypothecation, contract, or agreement whatever, to subject the vessel to such a claim. Abb. Shipp. p. 2, c. 3, § 9, who cites the Digest.

The common law courts of England have not adopted this rule of the civil law, but adhere to the strict doctrine of the common law in relation to implied liens, which are recognized only in certain cases where the subject on which the lien is to operate remains in the actual possession of the creditor. Upon this principle it is allowed in the case of the ship builder, who retains such possession, and who is not bound to surrender it until he is paid. But the repairer of a ship, or the tradesman who furnishes her with ropes, sails, or other necessaries, to enable her to navigate the sea, has no lien on the ship, or right of preference over other creditors, although she be a foreign ship, and is so repaired or furnished in England in the course of her voyage. Even the jurisdiction of the admiralty to proceed in rem in these cases is denied, upon the ground that the contracts are made on land, infra corpus comitatus, and this, notwithstanding the maritime nature of the subject-matter of the contract, which, in the case of Minet v. Gibson, 3 Term R. 451, Mr. Justice Butler held to be the criterion of the jurisdiction of that court. But it would seem, from the case of Justin v. Ballam, Salk. 34, 2 Ld. Raym. 805, which was that of a foreign ship, which had been furnished on the Thames with a cable and anchor, which were rendered necessary in consequence of stress of weather at sea; that if the ship had been in her voyage when she became distressed for want of those articles, and at the time of the contract, the implied lien would have been allowed, and that the master might, even in the case before the court, have given a valid hypothecation of the vessel in England for the security of the person who furnished the articles, upon the ground of the vessel being foreign. This then I must consider to be the law of the English court of admiralty, inasmuch as every attempt of that court to introduce the rule of the civil law upon subjects of lien, has been arrested by writs of prohibition from the courts of law.

This view of the subject presents a question of infinite importance, which has never yet been decided in this country, but which it is to be hoped may, ere long, be submitted to the consideration of the supreme court of the United States. How far are the district courts of the United States, sitting as instance courts, to regard the law of the admiralty court of England, as to questions of jurisdiction and rules of decision? It may possibly be answered that this question, so far as the present case is concerned, was settled by the supreme court of the United States in the case of The General Smith, 4 Wheat. [17 U. S.] 438, in which it was decided, that the common law of England being the law of Maryland, where the materials were furnished, material men and mechanics furnishing repairs to a domestic ship, have no particular lien upon the ship itself for the recovery of their demands. But the common law makes no distinction in this respect between domestic and foreign ships, denying the right of lien equally against both. The civil law allows it against both, making no distinction between them, so far as I am informed. Yet the supreme court, in the case just alluded to, and also in the case of The Aurora, 1 Wheat. [14 U. S.] 96, decided that where repairs are made, or necessaries are furnished, to a foreign ship, or to a ship in one state which belongs to another state of this Union, the general maritime law gives the party a lien on the ship for his security, and that he may maintain a suit in rem to enforce his right. In the case of The Jerusalem [supra]. Mr. Justice Story, after asserting the jurisdiction of the admiralty over all maritime contracts, maintains the doctrine, that a contract for repairs and supplies furnished to a foreign vessel, is governed by the maritime law, and creates a lien which has a preference over a prior bottomry bond. He adds, that the decisions at common law, on the subject of the admiralty jurisdiction, are not binding on us, and he proceeds avowedly upon the ground of the general maritime law, by which every contract of a mas-

ter for repairs and supplies, is said to import an hypothecation. It does not appear from the report of the case of Stevens v. The Sandwich [supra] whether the ship was foreign or domestic; but the learned judge states, in general terms, that a carpenter, by the maritime law, has lien on the ship for repairs in port; and that he is admitted by the civil law into the class of privileged creditors, without any regard to the place where the services are rendered. The same doctrine, as to a lien for repairs and supplies furnished a foreign ship, is maintained in the case of North v. The Eagle [supra].

But I shall pursue this inquiry no farther, it being sufficient for this part of the case, that for materials furnished to a foreign vessel in a port of the United States, the creditor has a lien on the ship, and may proceed to enforce it by a suit in rem in the admiralty. That is the present case, unless by the giving of credit, the lien was discharged, or never attached. It must be admitted, that by the common law of England, if credit be given in a clear case of lien, had the credit not been allowed, the lien is discharged. This was decided in the case of Raitt v. Mitchell, 4 Camp. 146, and is conformable to more ancient decisions of the common law courts. The same doctrine was maintained by Mr. Justice Story in the case Ex parte Lewis [Case No. 8,310], whose opinion seems, from the cases cited by him, to have proceeded entirely upon the decisions of the common law courts of England, but apparently contrary to the conclusion to which his own judgment had led him.

It is neither my intention, nor wish, to controvert the principle upon which these decisions are founded, or their application to maritime cases in the courts of the United States; inasmuch as the law which is to govern in admiralty cases, is by no means so settled as to leave me at liberty to express an opinion upon the subject, which I could, with any confidence, venture to maintain. Taking, then, the law to be as it is laid down in these cases, I am brought to the consideration of the two last objections urged against this claim. (1) That water casks furnished to a foreign vessel, are not of the nature of materials which entitle the creditor to a lien on the ship; and if they are, still (2) the claims of such creditor against surplus proceeds remaining in the registry of the court, cannot be maintained, in a case where that lien has been waived by an allowance of credit.

As to the first of these objections, I can feel no doubt whatever. I cannot agree with the counsel for the appellee, that the ground of lien for materials furnished is their adherence to the ship; as cables, anchors, ropes, and the like. I think it is more correctly contended on the other side, that the right of lien arises from the fact that the materials are necessary for the use of the vessel, to enable her to navigate the sea, and to pursue her voyage in safety. If this be the correct principle, the objection cannot be well founded, since it is obvious, that no article on board of a ship can be more essential to her conservation, and successful navigation of the sea, than the vessels which contain the water for the sustenance of those who are to navigate her. In the case of The Aurora [supra], which was that of an hypothecation, all that was required of the creditor was, to prove that the supplies furnished were necessary to effectuate the objects of the voyage. And in the case of North v. The Eagle [supra], the material furnished, and for which a lien on the ship was claimed, and decreed by the court, was ship chandlery, which surely cannot be considered more an article of necessity for the use of the ship than the water casks.

2. I am lastly to consider, whether this claim can, under the circumstances which attend it, be maintained against surplus and remnants remaining in the registry of the court? It seems to me that, upon principles of equity, and upon sound reason, independent of the authority of adjudged cases, this claim is well founded. Whatever objections may oppose it when it is asserted against the ship by an original suit, or when it assumes the character of a privileged debt, they lose all their consequences, when they are interposed to prevent its being satisfied out of surplus money, under the power and control of the court. The jurisdiction of the admiralty, in personam, for materials furnished even to a domestic ship, which creates no lien, or in cases where a lien might exist, and be enforced in rem, if it had not been waived, is, I think, indisputable; and if this were such a suit, it would, in my opinion, be the duty of the court to retain the fund, or as much of it as might be necessary, to await the final decision; and this upon ordinary principles of equity. But the owners of this fund are foreigners, and could not be reached by such a suit. They have, however, money in court, being the surplus of the proceeds of the vessel, for the necessities of which the materials in question were furnished. Would it consist with the plain dictates of equity and good conscience to pay out this fund to the owners, and to leave this claimant to pursue his remedy in some foreign tribunal? I think it would not. What are the objections upon the ground of reason which are opposed to this claim? It was said by the counsel that these implied liens are detrimental to commerce whenever they are considered as adhering to the vessel after she has left the port where they were created, by depriving her of the means of raising money abroad for her necessities, from persons who, not having the means of ascertaining by what liens she might be encumbered, would be unwilling to advance money upon her security. I acknowledge the weight of this objection against any original suit in rem against the vessel, and against any claim of prefer-

ence over other creditors to her proceeds. But the reason on which the objection is founded loses all its weight when the decree is asserted against remnants and surplus.

I beg it to be here understood, that I mean to confine the above course of reasoning to the particular case under consideration. I have merely endeavoured to show that this claim is reasonable, and consonant with the dictates of equity and good conscience. But although it may be all this, it does not follow that it is to be sustained merely on this ground. For I shall endeavour to prove that this claim is supported by the authority of at least one adjudged case, and by the principles laid down in two others.

The first case I have met with applicable to this subject, is that of The Favourite, 2 C. Rob. Adm. 232, which came before the court upon the petition of the mate; who, by the capture of the master at sea, and his detention by the captors, became master ex necessitate; to be paid his wages as mate, and as master out of the proceeds of the ship which had come into the registry under a decree in favour of holders of bottomry bonds. The court allowed the claim for mate's wages for the whole voyage; but as to the additional wages claimed as due to him in his character of master, the court said, that he must go elsewhere to recover them. But Sir William Scott lays down the general doctrine thus— "As to the distinction taken between an original suit, and a permission to be paid out of the proceeds, upon inquiry, no instance has been found in which a master has been permitted to sue against proceeds in the registry, except in cases of mere remnants and surplus, and not even then, if there have been any adverse interests opposing it." The clear inference deducible from the above quotation is, that even a master, particularly where he becomes such by devolution on the loss of the former master, is permitted to sue against a surplus in the registry, if there be no adverse interests in third persons which oppose it. The suit was not sustained in that case, because it was against proceeds which were claimed by other persons to satisfy bottomry bonds, and not against a surplus which would go into the pocket of the former owners of the vessel. And even in the case of a' master suing against proceeds for satisfaction of his wages, the judge states, that if the case of Read v. Chapman, 2 Strange, 937, had not stood in his way, he might have been disposed to entertain the suit.

The next case which I shall notice is that of Gardner v. The New Jersey [supra]. which was a suit against a surplus by the master, for moneys expended during the voyage for the purchase of necessaries required in the service of the ship, and wages paid to mariners, and also for his wages as master. The physician filed a similar petition, to be paid his demand for his professional services rendered on board of the ship. The claim of the master for moneys advanced for the use of

the ship was allowed; but that for wages, and also the petition of the physician, were dismissed. In the opinion delivered by the learned judge, he states his rule to have been, that where a sum is claimed out of the surplus or remnant, it must appear to be either of itself, or in its origin, a lien on the ship, or other thing out of which the moneys were produced.

I understand the rule thus laid down, as embracing, not only claims founded upon continuing liens, but such as in their origin, create a lien, but are discharged, or afterwards waived, as by giving credit, negligence of the creditor in enforcing it, and the like. If cases of discharged liens were not within the view of the court, what could be meant by the expression "in its origin, a lien;" as contradistinguished from "existing liens?" The judge obviously intended to exclude all claims of a mere personal nature in their origin, because the rule was to be applied to the very case before him, which was that of a master suing for his wages, and of a physician for a remuneration for professional services, in neither of which cases was there an original lien. But those are, in my apprehension, very different cases from one where an implied lien is created by operation of law, but which the law, contrary to the intention of the party, considers as being impliedly waived where credit is given: I say contrary to the intention of the party, for it is inconceivable that the creditor would designedly waive the security which the law gives him against the ship. He may, by such a contract, be justly excluded as a privileged creditor, and denied the right of maintaining an original suit against the ship, because of his having, though unintentionally, waived his lien. But to deprive him of the benefit of being paid out of a surplus which no other creditor claims, would seem to be a harsh doctrine, applied to him against reason and without necessity. I take the liberty further to remark upon this case, that the rule there laid down, understood as I think it ought to be, is much more rigid than that which Sir William Scott seems to sanction in the case of The Favourite.

I now come to the case of The John, 3 C. Rob. Adm. 288. which I consider to be decisive in the present case. That was a claim for the price of certain arms and stores furnished to an American ship in the port of London, on a voyage from thence to Venice. After her return from Venice to London, she was libelled and sold for mariners' wages; and the creditor who had furnished those articles, applied to the court by petition, praying to be paid his demand out of the surplus remaining in the registry. The payment was decreed; and in the opinion delivered by the judge, he observes, that he had had all the cases upon the point looked up, and he finds that it has continued to be the practice of that court to allow material men to sue against remaining proceeds on the registry, though prohibitions had been obtained on original

suits instituted by them; and he refers particularly to a similar decision of the court as far back as the year 1703.

Here then we have it laid down as the ancient and well established doctrine of the admiralty of England, in the face of the common law courts, that material men, who have originally no lien on the ship, upon the principles of the common law, and who if they had, had waived it by a personal contract on credit, may maintain a suit against remaining proceeds in the registry, although they could not originate a suit against the ship. That was a stronger case than the present, because in this the contract, in its nature, would have created an original lien, if it had not been waived by the giving of credit. No case was cited at the bar, nor do I know of any, which contradicts, or in the slightest degree impairs the authority of the case of The John [supra]. The Levi Dearborne [Case No. 17,988] was the case of an original suit against a domestic ship for materials furnished to her. The case Ex parte Lewis [supra] was a suit by a wharfinger, not against a surplus, but against the whole proceeds, to be paid as a privileged creditor, in preference to the holder of a bottomry bond, whose demand, for aught that appears, left no remnant. The case of Clinton v. The Hannah [Id. 2,898] was that of an original suit by a shipwright for his contract wages for building those vessels, and is therefore totally unlike the present.

After the fullest consideration which I have been able to give to this case, I am of opinion, that the claim of the petitioner, except for the two barrels of vinegar, which his counsel gives up, ought to be allowed. I shall therefore reverse the pro forma decree of the district court, and refer it to the clerk of this court to value the two casks of vinegar, unless the value is agreed by the parties or their counsel, and I shall then decree the balance to be paid out of the surplus remaining in the registry of the court.