[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14396
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:06-cv-01685-SDM-MAP

ODYSSEY MARINE EXPLORATION, INC.,

                                                    Plaintiff - Appellee,

KEITH BRAY,

                                                    Intervenor Plaintiff - Appellant,

versus

THE UNIDENTIFIED, SHIPWRECKED VESSEL OR VESSELS, in rem,
their apparel, tackle, appurtenances and cargo located within
center point coordinates: 49 25' N, 6 00'W'; Radius: 5 nautical miles,

                                                    Defendant - Appellee,

KINGDOM OF SPAIN,

                                                    Claimant.

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 31, 2011)

Before TJOFLAT, CARNES and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Appellant Keith Bray ("Bray") appeals the district court's dismissal of his action for contract recision based on lack of subject matter jurisdiction. Because we conclude that Bray's claim is cognizable in federal admiralty jurisdiction, 28 U.S.C. § 1333, we reverse and remand for further proceedings.

Bray, a citizen of Great Britain and researcher of sunken sea vessels, seeks recision of a contract that he contends appellee Odyssey Marine Exploration, Inc. ("Odyssey"), a Nevada corporation engaged in deep sea exploration and recovery, fraudulently induced him into entering. Bray alleges that ten years ago he entered into an oral agreement with Odyssey, in which he agreed to provide his research and data concerning the location of the *Merchant Royal*, a long-sunk and potentially highly valuable Spanish cargo vessel, in exchange for certain proceeds from the recovery of that vessel and other research costs. By Bray's account, Odyssey promised to keep him informed of its search efforts, but ultimately

2

provided no information about its progress. Bray continues that, five years after agreeing to the oral contract, Odyssey informed him that it had no plans to search for the *Merchant Royal*. The parties then executed a written contract in which Odyssey paid Bray a cash sum as "payment in full" for his research file. Bray seeks to rescind this written contract and reinstate the original oral agreement.

After executing the written contract, Bray learned that Odyssey had been searching for the *Merchant Royal*, and that the company had found a sunken vessel it believed to be the Spanish cargo vessel. Following Odyssey's discovery, the company initiated in rem proceedings to claim ownership of the vessel, and Bray moved to intervene. After preliminary proceedings, however, it became apparent that the wreckage discovered by Odyssey was not the *Merchant Royal*. As a result, the right to the *Merchant Royal* was no longer before the court, and the district court closed the in rem proceedings.

Having dismissed the underlying action, the court sua sponte ordered Bray to show cause why his intervening complaint should not be dismissed for lack of subject matter jurisdiction. After receiving submissions from both parties, the court dismissed Bray's suit, concluding that it was not cognizable in federal court. This appeal followed.

"We review a district court's determination that it is without subject matter

3

jurisdiction de novo." Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994). In so doing, we are mindful of the Supreme Court's command that "[n]ormal practice permits a party to establish jurisdiction at the outset of a case by means of a nonfrivolous assertion of jurisdictional elements." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 537–38, 115 S. Ct. 1043, 1050 (1995) (internal citations omitted). This maxim applies equally to admiralty and non-admiralty claims alike. Id.

Upon a thorough review of the parties' briefs and the district court's order, we hold that Bray has brought a proper federal claim. In relevant part, the district court concluded that Bray failed to set out a claim cognizable in admiralty jurisdiction because, "[a]lthough both Bray's research and Odyssey's obligation to pay pertain to the location of a ship, neither the research agreement nor the purported oral agreement amount to a maritime contract." This was so, the court reasoned, "because neither contract involves maritime commerce." We cannot agree.

Rather, we conclude "that 'the [contracts] here ha[ve] a more genuinely salty flavor.'" Norfolk So. R.R. Co. v. Kirby, 543 U.S. 14, 22, 125 S. Ct. 385, 392 (2004) (quoting Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S. Ct. 886, 894 (1961)). 28 U.S.C. § 1333 states: "The district courts shall have original

4

jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction." The Supreme Court has explained that

> [t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute. . . . Nor can we simply look to the place of the contract's formation or performance. Instead, the answer depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions.

Norfolk So. R.R., 543 U.S. at 24, 125 S. Ct. at 393 (quotation marks omitted). Thus, our task is to determine whether "the nature and character of the contract . . . has reference to maritime service or maritime transactions." Id.

We are persuaded here that contracts to provide research to assist in locating and recovering a sunken vessel are maritime in nature. Especially where, as Bray alleges happened here, the agreement allocated a partial share of the vessel's recovery in recognition of the parties' joint efforts to recover the *Merchant Royal*, these contracts are analogous to those long held to be cognizable in admiralty.

For example, in Norfolk So. R.R. Co., the Supreme Court reaffirmed "that a shipowner's promise to assume responsibility for any improper treatment his seaman might receive at a New York hospital was a maritime contract[,] . . . [b]ecause the promise was in furtherance of a 'peculiarly maritime concern.'" 543 U.S. at 24–25, 125 S. Ct. at 393 (discussing Kossick, 365 U.S. at 736–38, 81 S. Ct. at 884). We have similarly treated in rem actions concerning salvage as falling

5

within the scope of federal admiralty jurisdiction. See Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 569 F.2d 330, 333-336 (5th Cir. 1978).[1]  Indeed, admiralty jurisdiction is proper where parties are litigating their rights to treasure found on a long-since discovered ship.  Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel, 640 F.2d 560, 566 (5th Cir. 1981).  Bray's contracts with Odyssey, furnishing specific research into the location of a sunken vessel that facilitated Odyssey's efforts to find and recover that vessel, have a similar "peculiarly maritime concern."  Norfolk So. R.R., 543 U.S. at 24–25, 125 S. Ct. at 393 (discussing Kossick, 365 U.S. at 736–38, 81 S. Ct. at 884); see also New Jersey Steam Nav. Co. v. Merchant's Bank of Boston, 47 U.S. 344, 421 (1848) (quoting Zane v. The Brig President, 30 F. Cas. 909, 910 (1824)) (recognizing that contract "concern[ing] the navigation of the sea" is cognizable in admiralty).

This conclusion is bolstered by the Second Circuit's recent decision in Williamson v. Recovery Ltd., 542 F.3d 43 (2d Cir. 2008).  In that case, the plaintiffs contracted to provide the defendant with sonar equipment useful in locating sunken treasure.  Id. at 47.  In exchange, the defendant promised to share

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

a percentage of the recovery with the plaintiffs, but after actually recovering the treasure, refused to pay.  Id.  The plaintiffs brought suit in federal court, alleging that the contracts rendered the parties subject to maritime jurisdiction.  Id. at 47–48.  Both the district court and Second Circuit agreed, reasoning that the nature of the contracts was "salty" because they "were by their terms entered in connection with maritime commercial venture."  Id. at 49 (quotation marks omitted).  This connection, the court reasoned, negated the defendant's argument that the contracts were non-maritime because they were identical to any other employment or assistance contract.  Id.  Faced with a similar circumstance in this case—an exchange of research for a percentage of the spoils that research helps uncover—we find our sister circuit's reasoning highly persuasive.

For the foregoing reasons, we conclude that Bray's claim is properly cognizable under federal admiralty jurisdiction.[2]  Accordingly, we reverse the judgment of the district court dismissing this case, and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[2]  Having concluded that admiralty jurisdiction is proper, we need not address Bray's alternative jurisdictional arguments.