[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14797
Non-Argument Calendar
_____

D.C. Docket No. 8:06-cv-01685-SDM-MAP


ODYSSEY MARINE EXPLORATION, INC.,

Plaintiff,

versus

THE UNIDENTIFIED, SHIPWRECKED
VESSEL OR VESSELS,
their apparel, tackle, appurtenances and
cargo located within center point coordinates:
49 25' N, 6 00'W; Radius: 5 nautical miles,

Defendant.


_____

KEITH BRAY,

Intervenor Plaintiff - Appellant,

versus

ODYSSEY MARINE EXPLORATION, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 11, 2013)

Before CARNES, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Keith Bray appeals the district court's dismissal of his maritime contract action against Odyssey Marine Exploration (Odyssey).[1]  In his complaint, Bray alleged claims of mutual mistake, rescission, and fraud in the inducement, and requested a declaratory judgment rescinding a written agreement and reinstating an alleged prior oral agreement.

## I.    BACKGROUND

Bray researches shipwrecks.  Specifically, he tries to determine the location of wrecked ships that are believed to hold treasure.  One such yet-undiscovered shipwreck is that of the *Merchant Royal*, a British ship that sank off the English

_____

[1] This is the second time we have been asked to determine whether the district court properly dismissed Bray's complaint.  Previously, we reversed the district court's dismissal of Bray's action for lack of subject-matter jurisdiction and remanded for further proceedings, holding that Bray's contract claims were cognizable in federal admiralty jurisprudence because his contracts with Odyssey "were by their terms entered in connection with maritime commercial venture." See Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels, 636 F.3d 1338, 1341 (11th Cir. 2011) [hereinafter Odyssey I] (quotation marks omitted).

2

coast in 1641 while transporting cargo speculated to be worth close to $500 million.

Odyssey is an underwater salvage company that shares Bray's interest in potentially valuable shipwrecks. Bray alleges that on a trip to Paris he met Greg Stemm, Odyssey's co-chairman, and that during the course of their meeting Stemm orally agreed on Odyssey's behalf to pay Bray a seven and one-half percent share of the *Merchant Royal's* recovery value—should it be found and salvaged—in exchange for Bray's notes and research regarding the wreck. Bray further alleges that Stemm later attempted to back out of this oral agreement, offering in writing to give Bray "a cash payment of [£11,000] in lieu of the previous agreement for a percentage of the net recovery of the *Merchant Royal*." Bray accepted the cash.

Sometime after paying Bray for his research, Odyssey announced that it had located a shipwreck in the general area where Bray predicted the *Merchant Royal* went down. To determine the identity of the wrecked ship, Odyssey removed a portion of its cargo for testing. When it learned that the ship was not the *Merchant Royal*, Odyssey abandoned the site.

Odyssey's discovery of the unidentified ship, however, caused Bray to believe that Stemm induced him to give up his share of the *Merchant Royal's* spoils—estimated by Bray to be worth $37.5 million—in exchange for a cash buyout worth far less. Asserting that Odyssey "knows the location of the

3

*Merchant Royal*," and "intends to return to th[at] location," Bray sued to "rescind[] the second contract, [and] return[] the parties to the positions they held before the second agreement was entered into." Specifically, Bray alleged claims of "mutual mistake," "rescission," and "fraud in the inducement."

Odyssey moved for judgment on the pleadings or, in the alternative, summary judgment. In response, Bray requested, and was granted, leave to amend his complaint. Bray's amended complaint was substantially similar to his original complaint, except that it added a claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

After Bray filed his amended complaint, Odyssey moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Bray responded in opposition to Odyssey's motion to dismiss, but did not request leave to further amend his complaint. The district court granted Odyssey's motion, dismissing Bray's allegations of mutual mistake, rescission, and fraud in the inducement for failure to state a claim. The district court also dismissed Bray's request for a declaratory judgment because it determined that as to that count Bray had "fail[ed] to establish an Article III 'case or controversy.'" All claims except Bray's request for declaratory relief were dismissed with prejudice. This appeal followed.

## II.    DISCUSSION

4

On appeal, Bray argues that the district court was mistaken in its determination that his declaratory judgment action failed to establish an Article III case or controversy, and that his remaining actions failed to state claims under Rule 12(b)(6).[2]  Bray also argues that even if dismissal of his complaint was proper, the district court should not have dismissed his mutual mistake, rescission, and fraud in the inducement claims with prejudice.

## A. FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)[3]

We review a district court's ruling on a Rule 12(b)(6) motion de novo.  Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1056–57 (11th Cir. 2007).  "[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief."  Id. at 1057.  "Moreover, when ruling

---

[2]  Alternatively, Bray suggests that the district court was mistaken to dismiss his claims because in reversing the district court's dismissal for lack of subject-matter jurisdiction in Odyssey I, we implicitly endorsed the merits of his complaint.  This argument fails.  In Odyssey I, our review was limited to the question of subject-matter jurisdiction only; we gave no indication—express or otherwise—as to whether Bray's action, although cognizable for purposes of subject-matter jurisdiction, could withstand a motion to dismiss.  See generally Odyssey I, 636 F.3d at 1338–41.

[3]  The terms of the written contract between Odyssey and Bray provide that "[t]he laws of the State of Florida shall govern this Agreement."  Although our jurisdiction is in admiralty and, generally, "maritime law is federal law," we review the sufficiency of Bray's contract action under Florida law because we recognize that parties to a maritime contract may set the terms of the agreement between them, including choice-of-law, "provided that the application of state law does not frustrate national interests in having uniformity in admiralty law."  See Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., Inc., 207 F.3d 1247, 1251 (11th Cir. 2000); see also King v. Allstate Ins. Co., 906 F.2d 1537, 1541 (11th Cir. 1990) ("There being no public policy problem whatsoever in parties to a maritime . . . contract setting the terms of the [agreement] between them, we uphold their freedom to do so.").

on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." Id. A district court may properly dismiss a complaint with prejudice where the plaintiff has failed to request leave to amend, or if the complaint could not be more carefully drafted to state a valid claim. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc).

### 1.    Bray's Mutual Mistake Claim

Bray argues that the district court erred in dismissing his allegation of "mutual mistake." However, Florida law does not recognize mutual mistake as a claim for which a plaintiff may obtain relief. See CJM Fin., Inc. v. Castillo Grand, LLC, 40 So. 3d 863, 864–65 (Fla. 4th DCA 2010) (indicating that although "a mutual mistake may be a ground for reformation or rescission of a contract," to simply "say that 'mutual mistake' has occurred is a statement without legal significance" (footnotes omitted)). Rather, "mutual mistake" is "an avoidance" pleaded by a party when sued on a contract. Id. at 865. Therefore, Bray's allegation of "mutual mistake" is not a legally cognizable cause of action, and would fail to state a claim even if more carefully drafted. Thus, the district court properly dismissed this count with prejudice. See Wagner, 314 F.3d at 542.

### 2.    Bray's Rescission Claim

6

Bray also argues that the district court erred in dismissing his rescission claim. Florida law does recognize a cause of action for rescission. See Billian v. Mobil Corp., 710 So. 2d 984, 990 (Fla. 4th DCA 1998). To state a claim for rescission of a contract under Florida law, a plaintiff must plead, among other things, "an offer to restore . . . benefits" furnished under the contract by the defendant, "if restoration is possible." Id. at 991. Here, as noted by the district court, Bray failed to plead a cognizable claim for rescission because he offered to restore only "funds paid by ODYSSEY to BRAY in excess of that which ODYSSEY owed to BRAY" without also pleading that restoration of the full £11,000 he received under the written contract was impossible. See id. Thus, the district court properly dismissed Bray's rescission count for failure to state a claim. See id. The district court properly dismissed this count with prejudice because Bray's complaint was counseled; the district court had previously admonished Bray regarding the elements of a rescission claim; Bray had already been allowed to amend his complaint in response to Odyssey's motion for judgment on the pleadings; and Bray did not request the opportunity to further amend his complaint in response to Odyssey's motion to dismiss. See Wagner, 314 F.3d at 542.

### 3. Bray's Fraud in the Inducement Claim

To state a cognizable claim for fraud in the inducement, Florida law requires that a plaintiff plead an injury "[r]esulting [from] acting in justifiable reliance on [a

fraudulent] representation." See Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306, 308 (Fla. 4th DCA 1990). The district court dismissed Bray's fraud in the inducement claim for failure to plead "a resulting injury." Specifically, the district court determined that because the written agreement with Odyssey "changed only the consideration due" for services that Bray already rendered, "[t]he written agreement was simply a modification and produced no legal detriment."

Here, Bray argues that the district court's analysis was mistaken because it failed to consider the fact that his interest in the recovery of the *Merchant Royal* was alienable and could have been sold to investors, presumably for an amount greater than the £11,000 he received from Odyssey. Nowhere in Bray's complaint, however, did he plead facts sufficient to establish that a market exists for such a speculative commodity, let alone facts sufficient to establish that even if such a market did exist, his contingent recovery share would command a sum greater than that which he already received from Odyssey. Therefore, in keeping with the decision of the district court, we conclude that Bray has failed to plead "a resulting injury" and his claim was properly dismissed. And, as before, because Bray had already been allowed to amend his counseled complaint, and did not request to amend his complaint further upon Odyssey filing its motion to dismiss, the district court properly dismissed this claim with prejudice. See Wagner, 314 F.3d at 542.

B. FAILURE TO STATE AN ARTICLE III CASE OR CONTROVERSY

8

Bray's final claim was for a declaratory judgment rescinding his written agreement with Odyssey, and reinstating the prior oral agreement. The district court dismissed this claim without prejudice, determining that Bray had "fail[ed] to establish an Article III 'case or controversy'" as required to invoke the court's jurisdiction. Bray argues that the district court was mistaken in this assessment.

The Declaratory Judgment Act provides, in relevant part:

> In a case of <u>actual controversy</u> within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). The Declaratory Judgment Act's "actual controversy" requirement is jurisdictional and, thus, "a threshold question in an action for declaratory relief must be whether a justiciable controversy exists." <u>U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.</u>, 931 F.2d 744, 747 (11th Cir. 1991). To establish a case or controversy sufficient to invoke a court's jurisdiction under the Declaratory Judgment Act, a party must, "[a]t an irreducible minimum," show: "(1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." <u>Id.</u>; cf. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992) (same). Where, as here, a district court dismissed a

request for declaratory relief for lack of an Article III case or controversy, our review is de novo.  See U.S. Fire Ins. Co., 931 F.2d at 747.

Bray's argument that the district court erred in dismissing his declaratory judgment action reduces to an assertion that "a real, substantial controversy [exists] between adverse parties" because it is "sufficiently likely that . . . Odyssey has already or will soon find and salvage the *Merchant Royal*."  We are not persuaded. As explained by the district court, until such time that Odyssey (1) discovers the wrecked *Merchant Royal* and (2) refuses Bray's attempts to collect on the alleged oral agreement guaranteeing him a share of the salvage, Bray's request for a declaratory judgment remains "a premature and hypothetical [attempt] to pre-empt Odyssey's contingent defense in Bray's contingent lawsuit to establish Bray's contingent entitlement to a 7.5% share in the event of the contingent salvage of the *Merchant Royal*."  This piling-on of contingencies falls far short of the requirements for establishing an actual case or controversy for purposes of the Declaratory Judgment Act, see U.S. Fire Ins. Co., 931 F.2d at 747, and would render an attempt on our part to adjudicate the merits of Bray's claim an impermissible advisory opinion.  See Friends of the Everglades v. U.S. Envtl. Prot. Agency, 699 F.3d 1280, 1288 (11th Cir. 2012) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning."

(quoting <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 101, 118 S. Ct. 1003, 1016 (1998)).  Thus, the district court properly dismissed this claim without prejudice, subject to future developments sufficient to create an actual case or controversy.[4]

## III.    CONCLUSION

For these reasons, the district court's order is

**AFFIRMED.**

---

[4]  Bray does not challenge the district court's determination that his claim to an alienable interest in the *Merchant Royal's* recovery was also insufficient to establish a case or controversy within the meaning of the Declaratory Judgment Act.  A legal claim or argument that is not briefed on appeal is deemed abandoned.  <u>Access Now, Inc. v. Sw. Airlines Co.</u>, 385 F.3d 1324, 1330 (11th Cir. 2004).